**In re DISASTER AT RIYADH AIRPORT, SAUDI ARABIA, ON AUGUST 19, 1980.**

**M.D.L. No. 458.**
**Misc. No. 81–112.**

United States District Court, District of Columbia.

May 20, 1982.

**1142**

Phillip Silverman, Speiser, Krause & Madole, Aidan Jones, Washington, D. C., Lewis, Wilson, Lewis & Jones, Arlington, Va., Milton G. Sincoff, Kreindler & Kreindler, New York City, Gerald C. Sterns, George Stafford, Belli, Choulos & Sayre, San Francisco, Cal., for plaintiffs.

Carroll E. Dubuc, Haight, Gardner, Poor & Havens, Washington, D. C., William P. Butler, Lord, Bissell & Brook, Chicago, Ill., William E. McDaniels, Williams & Connolly, Washington, D. C., for defendants.

## MEMORANDUM

FLANNERY, District Judge.

This matter comes before the court on defendants' joint motion to dismiss the cases before this court on grounds of *forum*

*non conveniens.* For the reasons articulated below, defendants' motion to dismiss is conditionally granted.[1]

## FACTS

On August 19, 1980, plaintiffs' decedents were passengers on Saudi Arabian Airlines Flight 163, a regularly-scheduled flight between Riyadh, Saudi Arabia and Jeddah, Saudi Arabia. As the aircraft took off from Riyadh airport, a fire broke out on board the plane. Although the pilot was able to maneuver the plane back to the airport and to land it without incident, by the time the plane was opened all of its occupants were dead. According to the plaintiffs, the deaths were caused by inhalation of smoke and poisonous gases and by failure of the doors and emergency exits to open or to be opened. Plaintiffs have sued Saudi Arabian Airlines[2] ("SAA"), the operator of the plane, Trans World Airlines, Inc. ("TWA"), the company which trained SAA personnel in the operation of the plane, and Lockheed Corporation ("Lockheed"), the manufacturer of the plane.[3]

1. At the present time, there are a number of other motions pending before the court: 1) certain discovery motions, 2) defendant SAA's motion to dismiss on the basis of the Foreign Sovereign Immunities Act, 3) certain motions by defendants based on the Warsaw Convention, 4) defendants' motion to disqualify the Administrator appointed in several of these cases, and 5) certain plaintiffs' motion to remand their cases back to state court in California. The parties agreed that this court should hold the first two matters in abeyance pending this *forum non conveniens* decision and this decision now obviates the need for this court to rule on those matters. Similarly, this conditional dismissal obviates the need for this court to rule upon defendants' Warsaw-based motions.

 With regard to the fourth matter, defendants' motion to disqualify the Administrator appointed in several cases, although the parties did not specifically request the court to hold that motion in abeyance, this court felt that such an approach would be the most efficient one to take under the circumstances. Although the court finds that it need not now resolve this motion because of the instant *forum non conveniens* ruling, the defendants' motion does raise some troubling questions regarding the propriety of certain initiation-of-suit proceedings in these cases.

 Finally, with regard to the fifth motion, certain plaintiffs' motion to remand their cases, the court finds that the necessity for ruling on this motion is not obviated by this *forum non conveniens* decision; before this court dismisses these actions, it has a duty to determine whether they are properly before the court in the first instance. The court need not tarry long with this motion, however, because it finds that these actions were properly removed from state court in the first instance and are properly before this court at this time. First, it seems clear that defendant SAA, as a foreign state—*see* 28 U.S.C. §§ 1603(a) & (b), properly removed these cases from state court to federal district court in California pursuant to the provisions of 28 U.S.C. § 1441(d). Apparently anticipating such a finding, plaintiffs argue that even if SAA's removal was proper, this court should find that said removal only applied to the claims against, and the parties involved in the claims against, SAA and not the entire action, *see* Plaintiffs' Motion to Remand at 14 (citing *Alifieris v. American Airlines, Inc.*, 523 F.Supp. 1189 (E.D.N.Y.1981)); thus, plaintiffs maintain that at least their underlying claims against Lockheed must be remanded. This court cannot agree with such a piecemeal approach to the removal statute in this case and finds that the better approach is represented by the Fifth Circuit's recent decision in *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371 (5th Cir. 1980), which interpreted section 1441(d) as requiring removal of the entire action against all defendants. *Id.* at 1375. Finally, plaintiffs argue that it is likely, on either of two theories—foreign sovereign immunity or the validity of certain releases procured by SAA, that SAA will be dismissed from this suit and if this happens, then the remainder of the case must be remanded to California state court (apparently on the theory that the linchpin of the removal has evaporated). Without resolving the merits of plaintiffs' arguments regarding SAA's status in this case, the court believes that even if SAA were to be dismissed it would be appropriate to retain the other claims in this case for two reasons: 1) jurisdiction, either diversity or pendent, would exist for the retention of such claims, and 2) retention of such claims would promote the efficient use of judicial resources and ensure uniformity of results simply by virtue of this multi-district consolidation. Thus, the motions to remand filed in *Khan v. Lockheed*, No. 81–2594; *Hernandez v. Lockheed*, No. 81–2595; and *Zaman v. Lockheed*, No. 81–2596, are hereby denied.

2. At this point, the amenability of SAA to suit in the United States in connection with this accident is still an open question. *See* text *infra* at 1150.

3. Not all of these defendants were named in every case before the court; instead the plaintiffs have sued one, all or varying combinations of these three defendants.

The instant cases were originally filed in various jurisdictions throughout the country,[4] but in the interest of the efficient use of judicial resources, the Judicial Panel on Multi-district Litigation determined that all these actions should be consolidated for pretrial proceedings. Because this court had received the first federal case filed after the accident in question, this court received the assignment of handling the consolidated proceedings and, as a result, all other federal cases arising out of this disaster were transferred to this court. Of the consolidated cases before this court, eight had been brought on behalf of resident real parties in interest (i.e. United States relatives of United States decedents) and the remainder had been brought on behalf of foreign real parties in interest (i.e. foreign relatives or representatives of foreign decedents). At oral argument on this *forum non conveniens* motion, counsel for the parties informed the court that all the resident (i.e. United States) cases had been settled; thus, at present, all the cases pending before this court have been brought on behalf of foreign real parties in interest.[5]

## DISCUSSION

In considering a *forum non conveniens* motion, the trial court's basic function is to "weigh [the] relative advantages and obstacles to fair trial." [6] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1974) ("Gilbert"). Such a determination represents the "exercise[ ] of structured discretion by [a] trial judge[ ] appraising the practical inconveniences posed to the litigants and to the court should a particular action be litigated in one forum rather than another." *Pain v. Unit-*

*ed Technologies Corp.*, 637 F.2d 775, 781 (D.C.Cir.1980), *cert. denied*, —— U.S. ——, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). Although the plaintiff's initial forum choice is normally to be given "considerable, but not conclusive, weight" in the exercise of this discretion, *id.* at 783, this presumption in favor of the initial forum choice applies with less than maximum force when the real parties in interest are foreign. *See Piper Aircraft Co. v. Reyno*, —— U.S. ——, —— —— ——, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981); *cf. Pain*, 637 F.2d at 786 (plaintiffs' initial forum choice entitled to less deference when connection between plaintiffs, controversy and forum is tenuous).

Although, over time, a substantial body of *forum non conveniens* caselaw has been developed, the instant motion is largely controlled by the principles of two recent decisions: 1) the seminal *forum non conveniens* decision in this circuit—*Pain v. United Technologies Corp.*, 637 F.2d 775 (D.C.Cir. 1980), and 2) the Supreme Court's most recent *forum non conveniens* decision—*Piper Aircraft Co. v. Reyno*, —— U.S. ——, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).[7] In *Pain*, the Court of Appeals established a four-step test for a trial judge to follow in considering a *forum non conveniens* motion.

As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. Next, the trial judge must consider all relevant factors of *private* interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice [8]. If the trial judge finds this balance of

---

4. According to this court's records, it appears that: 1) one case was filed in Michigan, 2) one case was filed in New York, 3) eight cases were filed in the District of Columbia, and 4) thirty-six cases were filed in California.

5. These foreign real parties in interest represent decedents from Algeria, Bangladesh, China, Egypt, Finland, India, Iran, Ireland, Italy, Japan, Pakistan, Philippines, Saudi Arabia, Somalia, South Yemen, Sudan, Turkey, United Kingdom, West Germany and Yemen. *See* Defendants' Joint Motion to Dismiss.

6. "Where there has been no weighing of the relative advantages of each forum but only a consideration of the drawbacks of one, [the trial judge's] discretion has been abused." *Founding Church of Scientology v. Verlag*, 536 F.2d 429, 436 (D.C.Cir.1976) (emphasis in original).

7. Both *Pain* and *Piper* involved factual situations closely related to the one presently before the court.

8. As noted above, this presumption applies with less than maximum force in this case.

private interests to be in equipoise or near equipoise, he must then determine whether or not factors of *public* interest tip the balance in favor of trial in a foreign forum. If he decides that the balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.

*Pain,* 637 F.2d at 784–85. This four-step process clearly attempts to balance three distinct sets of interests: those of the plaintiffs, the defendants and the forums involved.

## I. Alternative Forums

Defendants have attempted to remove all contention over this threshold issue by agreeing to submit themselves to the jurisdiction of the national courts in either Saudi Arabia, the scene of the accident, or each plaintiff's domicile or in any other country having jurisdiction of a plaintiff's cause of action pursuant to Article 28 of the Warsaw Convention.[9] Although plaintiffs argue that alternative forums cannot be created by the defendants' consent, this does not appear to be a correct statement of the law. *See* Defendants' Reply to Plaintiffs' Opposition at 6. Further, in *Pain* the court specifically approved of Judge Hart's ordering a *forum non conveniens* dismissal "only on the condition that [the defendants] agree to submit to the jurisdiction of the various foreign courts of [plaintiffs'] choice." *Pain,* 637 F.2d at 785; *accord, Piper,* 102 S.Ct. at 258 (by implication).

Although defendants' willingness to consent to jurisdiction readily creates a number of alternative forums for these cases, it does not dispose of this threshold issue because satisfaction of this issue requires the existence of *adequate* alternative forums, not just alternative forums. *See* text *supra* at 1144–1145 (block quote from *Pain*). The inclusion of this adequacy qualification allows the court some room to make discretionary judgments as to the viability of the particular alternative forums existing in any given case (i.e. certain forums even though available might not yield just results in a given case); however, although this discretion exists, the *Piper* Court recently indicated that the range of this discretion is somewhat limited and that it is only in *"rare circumstances . . .* where the remedy offered by the alternative forum is clearly unsatisfactory" that such a discretionary finding of inadequate should be made. *Piper,* 102 S.Ct. at 265 n.22 (emphasis supplied). In explicating the degree of "inadequacy" required in this area, the Court noted that sufficient "inadequacy" to justify considering a proposed alternative forum inadequate for *forum non conveniens* purposes would exist when "there is . . . danger that [the plaintiffs] will be deprived of *any* remedy or treated unfairly."[10] *Id.* at 265 (emphasis supplied). By way of contrast, the *Piper* Court noted that an alternative forum need not be considered "inadequate" merely because the plaintiffs would be deprived of the ability to rely upon a particular theory of liability or because their potential damage award might be smaller. *Id.*

Although the materials presented to this court on the instant motion do indicate that there may be some disincentives to proceeding in the alternative forums presently available, such as smaller damage awards[11] or the inability to utilize a contingent fee

---

**9.** The plaintiffs in each case will apparently be given the option of electing to proceed in any one of the jurisdictions available to them.

**10.** As a specific example of this degree of danger, the *Piper* Court stated that an alternative forum which did not permit litigation of the subject matter of the dispute would be an inadequate alternative forum. *See id.* at 265 n.22 (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,* 78 F.R.D. 445 (D.Del.1978)).

**11.** As noted above, the *Piper* Court expressly rejected the importance of this factor. Similarly, the *Pain* court noted that "the comparative amount of recovery obtainable in the two alternative forums has *never* been considered a factor relevant to the *forum non conveniens* inquiry." *Pain,* 637 F.2d at 794 (emphasis supplied).

relationship,[12] the court does not find that the presented potential problems rise to the level of inadequacy envisioned by the *Piper* Court. There is no danger that the instant plaintiffs will be deprived of *any* remedy or otherwise treated unfairly and this court finds that the alternative forums available in this case are adequate alternative forums for purposes of this *forum non conveniens* analysis.

## II. Private Interest Factors

 As private interest factors, this court must consider: A) the relative ease of access to sources of proof, B) the availability of compulsory process for attendance of unwilling witnesses, C) the cost of obtaining attendance of willing witnesses, D) the possibility of viewing the scene of the accident, and E) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Piper*, 102 S.Ct. at 258 n.6 (citing *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843); *accord Pain*, 637 F.2d at 786 (reciting first four factors, but not catch-all fifth factor).

## A. Relative Ease Of Access To Sources of Proof

As the *Pain* court correctly noted, any evaluation of this ease of access factor must begin with an understanding of the various theories which the parties may seek to prove at the trial of these cases. *Pain*, 637 F.2d at 786. Combining the theories of liability which have been put forward in this case with the other important area of proof in all these cases—damages, the court finds that analysis of this first private interest factor must be broken down into an analysis of four component areas of proof:

1) evidence as to defects in the plane itself, either strict liability or negligent design or manufacture defects, 2) evidence as to improper conduct by TWA in either its training and provision of flight personnel for SAA or its maintenance of the airplane, 3) evidence as to negligent conduct on behalf of SAA, either in the maintenance or operation of the plane,[13] and 4) evidence as to the amount of damages suffered by plaintiffs.

1) Evidence of this nature is needed because plaintiffs' allegations encompass claims based on the faulty design and/or manufacture of the plane involved in this disaster.[14] Obviously, such evidence of any defects in the plane itself[15] would most likely be in the possession of the plane's designer and manufacturer. Since Lockheed manufactured the plane and since Lockheed's headquarters and manufacturing plants are both located in the United States, it seems clear that any evidence regarding faulty manufacture of the plane would be in the United States. Thus, use of a United States' forum would further the ease of access to these sources of proof.

2) Evidence of this nature is important because the plaintiffs' allegations also encompass claims of negligent and/or willful misconduct by TWA in connection with its training of SAA personnel. Although TWA is located in the United States, the training of SAA personnel apparently took place in Saudi Arabia; further, while the TWA personnel actually involved in the training of SAA personnel are probably now located in the United States, the SAA personnel actually trained are most likely still in Saudi Arabia. Because it appears that evidence from both the TWA and the SAA personnel

**12.** In *Piper*, the Court specifically noted that such an inability to utilize a contingent fee relationship was characteristic of most foreign jurisdictions. *See Piper*, 102 S.Ct. at 264 n.18.

**13.** By these three categorizations, the court does not mean to imply that the proof referred to under any of these liability theory categories would be sufficient, in and of itself, to try the referred-to theory of liability against a particular defendant; obviously, the proofs described under all three of these categories are, to some degree, interrelated when it comes to establishing a defendant's liability. *See Pain*, 637 F.2d

at 787–88 (even under strict liability theory (category 1), maintenance records (category 3) would be relevant to issue of proximate cause).

**14.** These claims against Lockheed are based on negligence and/or strict liability and/or breach of warranty.

**15.** In this category, the court is referring to defects in the plane when it was first designed and assembled; any other defects in the plane caused by improper maintenance will be discussed under the third category.

involved in the training program will be necessary to the trial of these theories of liability, it appears that the ease of access factor is in near equipoise in this category: a United States' forum would provide greater ease of access to TWA's evidence while a foreign forum would provide better ease of access to SAA's evidence. Because TWA's evidence might be somewhat more important to the proceedings on these theories of liability than SAA's evidence, the court finds that the ease of access factor is tipped ever so slightly in favor of a United States forum for this category of evidence.

3) Evidence of this nature is needed because the plaintiffs' allegations also encompass claims based on the negligent and/or improper maintenance and/or operation of the plane involved in this disaster. Since SAA was responsible for maintaining the plane and was, in fact, operating the plane at the time of the events in question and since SAA's base of operations is located in Saudi Arabia, it appears that any evidence relating to SAA's misconduct in this case would be located in Saudi Arabia. Thus, use of a foreign forum would provide better ease of access to these sources of proof.

4) Evidence of this nature obviously lies at the heart of the plaintiffs' claims for relief in these cases. It seems beyond dispute that the vast majority, and most likely all, of the evidence relating to measurement of the damages suffered by plaintiffs is located in the domicile of each foreign decedent. *See Piper*, 102 S.Ct. at 259; *Pain*, 637 F.2d at 787–88. Thus, use of a foreign forum would greatly facilitate the ease of access to these sources of damages evidence.

*Overall Analysis*

Having considered the four categories of evidence individually, this court must now balance these individual findings together and reach an overall assessment regarding this first private interest factor. Summarizing the individual findings, the court notes: that two categories of evidence, categories 3 and 4, plainly favor foreign forums, that one category of evidence, category 1, plainly favors a United States forum; and that the remaining category of evidence, category 2, slightly favors a United States forum. Balancing these findings together, the court finds that, although the issue is close, overall the ease of access to all sources of proof in these cases would be furthered by trial in a foreign forum.[16]

*Effect of Defendants' Liability Concession*

The above-described ease of access analysis was performed without considering the defendants' willingness to concede liability in these cases if the cases are transferred to foreign forums. Of course, the liability concession would, if accepted by the court, have an important effect upon this factor and its effect must be considered.[17] Basically, defendants' liability concession would remove the first three categories of evidence, which are all liability theory categories, from consideration thereby leaving the ease of access to the fourth category of evidence, damages, as the sole consideration under this private interest factor. As noted above, the ease of access analysis for this fourth category of proof strongly favors the use of a foreign forum.

**B. Availability Of Compulsory Process For Attendance Of Unwilling Witnesses**

Analysis of this factor is also aided by reference to the above-described evidentiary categories in this case. At this point, it appears that this factor is in approximate

---

16. Although the court recognizes that some of the necessary documents and testimony could probably be obtained from abroad through channels of international judicial assistance and that the availability of such international judicial assistance, at first glance, appears to eliminate much of the importance of this ease of access analysis, the court also realizes that these international assistance mechanisms "are far from perfect" and that, despite their existence, "significant procedural obstacles" might hinder the gathering of all desired evidence.

*See Pain*, 637 F.2d at 788–90 (discussing problems associated with international mechanisms). As a result, the ease of access factor remains important, even though some international assistance mechanisms do exist.

17. Throughout this private interest factor analysis, the court will first consider the relevant factors without regard to the liability concession and will then separately consider the effect of the concession on the analysis.

equipoise as between a United States and a foreign forum; the use of either forum will result in certain crucial witnesses and evidence being beyond the reach of that particular forum's compulsory process. For example, although the compulsory process of a United States forum would be sufficient to compel production of the design and manufacture evidence,[18] category 1, and TWA's training program evidence, part of category 2, a United States forum would likely be unable to require the attendance of those foreign witnesses having knowledge of either plaintiffs' damages, category 4, or SAA's training program information, part of category 2, or SAA's maintenance and operation of the plane in question, category 3.

Similarly, the proffered foreign forums in this case, either Saudi Arabia or the particular plaintiff's decedent's domicile, would have sufficient compulsory process to compel certain amounts of the evidence in these cases, but insufficient evidence to compel other evidence. For example, the Saudi Arabian courts would be able to compel the evidence regarding SAA's conduct in maintaining and operating the plane and the SAA training program evidence, but would probably have problems compelling the design and manufacture evidence, the TWA training program evidence, and the damages evidence. Likewise, the courts in each plaintiff's decedent's domicile would have compulsory control over all the damages evidence, but would have trouble compelling evidence in any of the other categories. On the basis of the foregoing analysis, this court finds that the compulsory process private interest factor is in approximate equipoise in this case.

*Effect Of Defendants' Concession Of Liability*

As noted above, defendants' liability concession would remove everything but the damages evidence from consideration in these cases. Since the damages evidence is within the compulsory reach of the courts in the plaintiff's decedent's domiciles, and apparently not within the compulsory reach of the United States, analysis of this compulsory process factor in light of the defendants' concession argues strongly in favor of using the foreign forums in each plaintiff's domicile.

**C. Cost Of Obtaining Willing Witnesses**

Once again, analysis of this factor turns upon reference to the previously-described evidentiary categories with particular reference to the likely locus of the various witnesses in this case; the comparison of the advantages and disadvantages of each of the forums with regard to this cost factor is similar to the comparisons already conducted above.

If these cases are tried in the United States, then the costs involved in obtaining willing witnesses to testify concerning the design and manufacture evidence and the TWA training program evidence would be relatively insignificant; however, significant costs would be involved in transporting and accommodating willing witnesses: 1) from Saudi Arabia concerning SAA's maintenance and operation of the plane and the SAA training program, and 2) from each plaintiff's decedent's domicile concerning damages. If these cases are tried in Saudi Arabia, then the costs of obtaining witnesses regarding alleged SAA misconduct and the SAA training program would be minimal, but some significant costs would be incurred in securing willing witnesses: 1) from the United States to testify as to the design and manufacture of the plane and the TWA training program, and 2) from the plaintiffs' decedents' domiciles to testify regarding damages. Finally, if these cases are tried in each plaintiff's decedent's domicile, then there will be insignificant costs involved in procuring residents to testify concerning damages, whereas some significant costs would be involved in procuring willing liability witnesses from both the United States and Saudi Arabia.

Although these conflicting cost considerations appear, at first glance, to be in relative equipoise, like the compulsory process factor discussed above, the court believes that a deeper look reveals that these cost

---

**18.** As used herein, the term evidence refers to both live and documentary evidence.

considerations slightly favor trial in a foreign forum. The main factor supporting such a finding is the physical locations of the foreign forums involved. Saudi Arabia and the individual decedent's domiciles are generally [19] much closer to each other than either of them are to the United States. This being so, more witnesses will have to travel farther distances if trial is held in the United States, than if trial is held in one of these foreign forums.[20] Since the cost of attendance seems clearly related to the distance of travel, this proximity factor appears to justify favoring the foreign forums in this cost consideration analysis.[21]

As a result, this court finds that the cost of obtaining willing witnesses factor favors the use of a foreign forum in these cases.

*Effect Of Defendants' Concession Of Liability*

Defendants' concession of liability would apparently make it unnecessary for any liability witnesses to be transported anywhere in these cases and, thus, there would be no costs associated with those witnesses. The only remaining cost consideration, therefore, would be the cost of transporting willing damages witnesses to the place of trial. Obviously, trying these cases in the domicile of each individual decedent would involve the least cost in obtaining these witnesses' attendance. The second most cost-efficient place for trying these cases would be Saudi Arabia because transportation to Saudi Arabia would involve a shorter trip for most damages witnesses than transportation to the United States would. Since no damages witnesses are currently located in the United States and since the United States is generally farther from the decedents' domiciles than is Saudi Arabia, the use of a United States forum would result in the greatest expense being incurred by virtue of these damages witnesses' transportation to the place of trial.[22] Thus, defendants' liability concession enhances the cost consideration favorability of using a foreign forum in these cases.

19. The court is not saying that every plaintiff's decedent's domicile is closer to Saudi Arabia than to the United States, but just that most of them appear to be; for purposes of this discussion and overall analysis, the domiciles will be considered generally.

 This finding that the decedent's domiciles in these cases are generally in greater proximity to Saudi Arabia than to the United States is strengthened by consideration of the number of decedents residing in certain countries; at the time that this motion was filed, defendants were able to confirm that out of the passengers and crew members killed in this accident: 1) 74 were citizens of Pakistan, 2) 29 were citizens of Iran, and 3) 26 were citizens of Saudi Arabia. *See* Defendants' Joint Motion to Dismiss For *Forum Non Conveniens*, Affidavit of William P. Butler.

20. For example, if the plaintiff's decedent's domicile in a particular case was Pakistan, then the following situation arises: 1) the design and manufacture witnesses and the TWA training witnesses are located in the United States; 2) the SAA training witnesses and the SAA operation and maintenance witnesses are located in Saudi Arabia; and 3) the damages witnesses are located in Pakistan. If trial were held in Saudi Arabia, then the witnesses from the United States would have to travel to Saudi Arabia (a long distance) and those from Pakistan would have to travel to Saudi Arabia (a short distance). Similarly, if trial were held in Pakistan, then the witnesses from the United States would have to travel to Pakistan (a long distance) and those from Saudi Arabia would have to travel to Pakistan (a short distance). However, if trial were held in the United States, then the witnesses from Saudi Arabia would have to travel to the United States (a long distance) and the witnesses from Pakistan would have to travel to the United States (a long distance).

21. At the time that this motion was filed, it was confirmed that at least 26 decedents, both passengers and crew members, were citizens of Saudi Arabia, *see* Defendants' Joint Motion to Dismiss for *Forum Non Conveniens*, Affidavit of William P. Butler, if cases are filed on behalf of any of these decedents, then the unusual situation will exist where both certain liability witnesses *and* the damages witnesses would not incur significant costs if the trials were held in Saudi Arabia. Thus, if this situation arises, one whole level of additional expense, the cost of transporting damages witnesses, could be avoided by trying these cases in Saudi Arabia; such a cost-saving scenario was also possible in the United States until the resident-plaintiff cases were settled.

22. This U. S. forum analysis is made for the purpose of comparison only because the defendants will not concede liability if a U. S. forum is used.

### D. Possibility Of Viewing The Scene Of The Accident

This factor is insignificant in these cases. Given the nature of the accident, the accident scene possesses no information either important or relevant to determining the merits of these cases.

### E. Other Practical Problems

Under this factor, the court must consider any and all other problems that might make the trial of these cases easy, expeditious and inexpensive. Although the court believes that most of the important factors have been accounted for above, there is one further problem which deserves mention. This problem is the amenability of SAA to suit in the United States; the problem exists because SAA is a foreign state within the meaning of the Foreign Sovereign Immunities Act, see 28 U.S.C. §§ 1603(a) & (b), and, as a result, may well be immune from suit in United States courts in connection with the instant accident. Obviously, SAA's activities in operating the plane in this case have some importance to the proof of all theories of liability in this case; [23] if SAA is immune from suit and the other defendants are thereby unable to implead SAA into these cases, then some practical problems arise. In *Pain*, the defendant was faced with a similar inability to implead the foreign operator of the tragedy-stricken vehicle and the Court of Appeals noted that this inability was a "major factor of private interest militating in favor of dismissal." *Pain*, 637 F.2d at 790. Although it is true that the defendants could protect their rights by later initiating contribution or indemnity suits against SAA, it would obviously be most expeditious to resolve all these related claims in one forum and in one suit. *See Piper*, 102 S.Ct. at 267; *Pain*, 637 F.2d at 790–91. Because the court has not resolved the complicated issue of SAA's immunity from suit in this case,[24] the court cannot definitively state that this immunity problem favors trial in one forum as opposed to another; instead the court merely wishes to note the potential problem.

### Effect Of Defendants' Concession Of Liability

Defendants' liability concession impacts upon this catchall, other practical problems factor in two ways. First, with regard to the potential immunity problem discussed above, defendants' concession would obviate the problem because the concession comprises an admission of liability by all three defendants—Lockheed, TWA and SAA; thus, neither Lockheed nor TWA would be prejudiced by an inability to make SAA pay for its share,[25] if any, of the total liability in each case at the time that the case is initially tried (i.e. without having to institute a separate indemnity or contribution action).

The second, more direct effect of defendants' liability concession would be the practical benefits resulting from the fact that neither a trial of liability issues nor any discovery on liability issues would need to be undertaken in these cases. These benefits would clearly make the trial of these cases easier, more expeditious and less expensive.[26] Thus, for these practical reasons, defendants' concession of liability favors the use of a foreign forum in these cases.

---

**23.** At least to the extent of impacting upon causation analysis. *See* note 13 *supra* at 1146.

**24.** *Cf. Piper*, 102 S.Ct. at 263 (*forum non conveniens* doctrine designed in part to help courts avoid complex exercises in comparative law) and at 267 (requiring extensive investigation would defeat purposes of motion). Further, certain plaintiffs' attorneys requested and received an extension of time until after this *forum non conveniens* decision within which to file their oppositions to defendant SAA's motion to dismiss.

**25.** If the concession is accepted, then the defendants will decide among themselves what amount each is to be liable for as its portion of the total damages in any given case.

**26.** This is true even though it appears likely that only one liability trial would need to be conducted to establish liability in all these cases.

### E. Private Interest Conclusion

Summarizing the findings in the previously-undertaken private interest analyses, the court finds that: 1) the ease of access factor slightly favors the use of a foreign forum; 2) the compulsory process factor is in equipoise; 3) the cost consideration factor favors the use of a foreign forum; 4) the view of the accident scene factor is inapplicable; and 5) the other practical problems factor is insignificant. Thus, overall, these private interest factors favor the use of a foreign forum. This overall analysis does not end the inquiry, however, because the court must now "weigh[ ] in the balance [the] presumption against disturbing plaintiffs' initial forum choice," *Pain*, 637 F.2d at 784; as noted above, *see* text *supra* at 1144, this presumption is entitled to some, but not considerable, weight in this case because of the foreign status of the real parties in interest. Effecting this balance of the private interests analysis with the original choice presumption, the court finds this balance to be near equipoise with the balance shifted ever so slightly in favor of the use of a foreign forum. Because this balance is near equipoise, the court must go on to "determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum." *Id.*

### Effect Of Defendants' Concession Of Liability

Summarizing the above-described effects of defendants' concession of liability on the private interest factors, the court finds that: 1) the ease of access factor favors the use of a foreign forum; 2) the compulsory process factor favors the use of a foreign forum; 3) the cost consideration factor strongly favors the use of a foreign forum; 4) the view of the accident scene factor is inapplicable; and 5) the other practical problems factor favors the use of a foreign forum.[27] Balancing these findings with the reduced presumption in favor of the plaintiffs' original forum choice, the court finds that the balance clearly favors the use of a foreign forum.

## III. Public Interest Factors

As public interest factors, the court must consider: A) any unnecessary burdens associated with trying these cases in a particular forum, such as docket congestion, court administrative difficulties and the burden of jury duty; B) the local and/or general national interest in using a particular forum; and C) each forum's familiarity with the governing law in the case so that unnecessary conflict of laws and application of foreign law problems can be avoided. *See Piper*, 102 S.Ct. at 258 n.6 (citing *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843–844); *Pain*, 637 F.2d at 791–92.

### A. Burden Factors

Initially, the court must note that any burden problems in this case are not as severe as they might otherwise be precisely

---

27. From the foregoing, it is apparent that the defendants' concession of liability strongly skews the private interest factors in this case in favor of the use of a foreign forum. In recognizing this, the court is mindful of the possibility that the defendants in this case "may in fact be engaging in a subtle forum of 'reverse forum-shopping.'" *Pain*, 637 F.2d at 793–94. However, the *Piper* Court recently noted that "this possibility ordinarily should not enter into a trial court's analysis of the private interests." *Piper*, 102 S.Ct. at 264 n.19. Even though the *Piper* Court's language arguably allows for consideration of the "reverse forum-shopping" possibility in an *exceptional* situation, the facts in this case do not amount to such an exceptional situation. Because the other circum-

stances and concessions in this case indicate, at least as strongly as the facts before the court in *Pain*, that the decision to proceed abroad is not costless, *see Pain*, 637 F.2d at 794, and because this court's private interest analysis slightly favors the use of a foreign forum even in the absence of defendants' liability concession, this court declines to find that defendants' motion for dismissal is either disingenuous or improperly motivated. The defendants' concession of liability has not totally tipped or altered the scales of convenience, but instead has merely clarified and strengthened the already existing balance; the propriety of this clarification is further revealed by reference to the public interest analysis which confirms that these cases should be tried in foreign forums.

because these cases have been transferred from various jurisdictions throughout the country; as a result, no one jurisdiction in this country will be faced with the prospect of having to try all these cases. However, since a large number of these cases were originally filed in, and would thus return to, California courts, it is highly likely that California's judicial system will be significantly burdened by the retention of these cases in the United States. While judicial burdens of this type are inherent in all multiple case, multiple party actions of this type,[28] the justifiability of imposing such burdens on a particular forum or jurisdiction depends upon the dispute's contacts with the jurisdiction involved. *See Pain*, 637 F.2d at 792.

In the instant case, the only contacts between the United States and this accident are the facts that some years ago Lockheed manufactured the plane involved in the accident and that some years ago TWA trained personnel in the operation of the plane.[29] By contrast, the instant accident's contacts with the foreign forums appear overwhelming. First, the airplane in question was owned and operated by SAA, a Saudi Arabian national corporation. Second, the airplane was apparently maintained by SAA in Saudi Arabia since the date of its delivery from the United States. Third, the wreckage, service records and maintenance records for the airplane are apparently all located in Saudi Arabia. Fourth, when the accident occurred, the airplane was on an intra-Saudi Arabian flight. Fifth, the Saudi Arabian Presidency of Civil Aviation conducted an official investigation of the accident. Sixth, and finally, all the real parties in interest in this case (i.e. the relatives of the decedents in

this accident) reside outside the United States.

Because this controversy's contacts with the United States pale in comparison to the controversy's foreign contacts and because the American contacts are relatively insignificant[30] in and of themselves, it appears that there is simply insufficient justification for imposing the burdens associated with these cases on the citizens of the United States; jury duty ought not to be imposed upon the people of the United States nor should United States courts be clogged by processing these cases when the underlying accident has such tenuous contacts to the United States. *See Pain*, 637 F.2d at 792. Thus, this public interest factor favors the use of a foreign forum in this case.

### B. Local And/Or General National Interest In The Dispute

This interest analysis to a large degree mirrors the above-described burdensomeness analysis; that is, the interest in trying these cases in a particular forum reflects, to some degree, the underlying dispute's contacts with that particular forum. *See Pain*, 637 F.2d at 792–93. Based on the only contacts that this controversy has with the United States, the plaintiffs strenuously argue that the United States as a whole and certain states in particular (i.e. California) "have an interest in ensuring that American manufacturers are deterred from producing defective products [such as the plane in this case] and that additional deterrence might be obtained if [the defendants] were tried in the United States."[31] *Piper*, 102 S.Ct. at 268. Although this argument possesses facial appeal and has been accorded weight in some past *forum non conveniens*

---

**28.** The least judicial burden would be imposed by trying each of these cases in each particular plaintiff's decedent's domicile.

**29.** When these cases were originally transferred here, there was the additional American connection that some of the real parties in interest were United States residents, but, as noted above, those resident plaintiff cases have

been settled and, thus, this connection no longer exists.

**30.** *See* text *infra* at 1152–1153 (discussion of local and national interest in this dispute).

**31.** The same deterrence argument ostensibly applies to TWA's training endeavors.

decisions, the *Piper* Court expressly undercut the premise of this argument by noting that "the incremental deterrence that would be gained if this trial were to be held in an American court is likely to be *insignificant.*" *Id.* (emphasis supplied). As a direct result of this finding, the Court went on to state: "The American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *Id.* This court finds that the local and/or national interests asserted by the plaintiffs in these cases are similar to those asserted by the plaintiffs in *Piper* and, as a result, the court finds that there is simply insufficient American interest in this accident to justify the use of a United States forum in these cases.

Beyond the lack of any significant American interest in prosecuting these actions in the United States, it clearly appears that Saudi Arabia has an interest in this litigation: the plane involved was owned and operated by a Saudi Arabian national corporation and the accident occurred in Saudi Arabia while the plane was on an intra-Saudi Arabian flight. *See Piper*, 102 S.Ct. at 268 (citing *Gilbert*, 330 U.S. at 509 (local interest in having localized controversies decided at home)); *Pain*, 637 F.2d at 793. *See also* text *supra* at 1151–1152 (discussing other factors relating to Saudi Arabia's interest). As a result, Saudi Arabia's interest in resolving a controversy occurring within its borders and involving one of its nationally owned corporations is clearly superior to the insignificant American interest in prosecuting these actions. *See Dona-*

hue v. Far Eastern Air Transport Corp., 652 F.2d 1032, 1038 (D.C.Cir.1981). Similarly, in light of the *Piper* Court's discounting of the proffered American interest in trying these cases, it appears that the courts in each decedent's domicile also have a stronger interest in trying these cases, and thereby protecting their own citizens' rights, than the United States does. On the basis of the foregoing, this interest in the dispute factor clearly favors the use of a foreign forum in these cases.

### C. Familiarity With Governing Law

This factor, as noted above, requires the court to evaluate any potential conflicts of law and applicability of foreign law problems that might arise in the trials of these cases and enables the court to consider the burdens associated with such problems in determining which forum would be best suited to handle these cases. *See Piper*, 102 S.Ct. at 263; *Pain*, 637 F.2d at 793. Without attempting to finally resolve the issue,[32] a preliminary conflicts analysis in this case indicates that Saudi Arabian law would likely govern resolution of the substantive dispute in this case, both as to liability and damages,[33] since Saudi Arabia is the place where the tort occurred and apparently the jurisdiction with the most substantial interest in the dispute.[34] *See Pain*, 637 F.2d at 793.

Despite the possibility that foreign law may apply to these cases, the court does not consider the burden or applying foreign law to be very significant; "Federal courts are experienced in applying foreign law and should not be reluctant to do so." *Note, Forum Non Conveniens And Foreign Plain-*

---

**32.** *See Piper*, 102 S.Ct. at 263 (*forum non conveniens* doctrine designed in part to help courts avoid complex exercises in comparative law); *Pain*, 637 F.2d at 793 n.101.

**33.** Thus, even if these suits were maintained in the United States, it appears that plaintiffs would encounter a formidable choice of law obstacle in avoiding application of foreign rules governing the amount recoverable in these actions. *See Donahue v. Far Eastern Air Transport Corp.*, 652 F.2d at 1039 n.12; *Tramontana*

v. S. A. Empresa De Viacao Aerea Rio Grandense, 350 F.2d 468 (D.C.Cir.1965) (Brazilian limit on wrongful death damages, then approximately $170, applicable to death of Maryland resident on intra-Brazil flight on Brazilian domestic air line).

**34.** *See also* text *supra* at 1151–1152 (discussing Saudi Arabian interest).

*tiffs In The Federal Courts,* 69 Geo.L.J. 1257, 1268 (1981). Because problems in applying any other state or country's law are not beyond the capability of a federal court and because these types of problems, as well as linguistic and translation problems, will likely arise to some degree wherever these cases are eventually tried, this court finds that this potential problem is not significant enough to affect the overall balance of interests in any way. Thus, this familiarity with the governing law factor does not favor any particular forum in these cases.

### D. Public Interest Conclusion

Summarizing the above-described findings in the public interest analyses, the court finds: 1) the burden factors favor the use of a foreign forum; 2) the interest in the dispute factor clearly favors the use of a foreign forum; and 3) the familiarity with governing law factor is insignificant. Thus, overall, these public interest factors clearly favor the use of a foreign forum in these cases.

### IV. Conclusion

■ Having evaluated and applied the private and public interest factors relevant to a *forum non conveniens* motion, it is this court's considered opinion that these cases should proceed to trial in the foreign forums made available through defendants' concession of liability in these cases. The

inconveniences and burdens to both the parties and the public of conducting a fair trial in the United States are both clearly greater than the inconveniences and burdens that would accompany trial in a foreign forum [35] and clearly sufficient to overcome the reduced presumption favoring plaintiffs' initial forum choice in these cases. "The American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case[s] were to be tried here." *Piper,* 102 S.Ct. at 268. Moreover, in addition to this country's lack of interest this court must recognize both the important, legitimate interests of the foreign forums in these cases, *see Donahue v. Far Eastern Air Transport Corp.,* 652 F.2d at 1038; and "the ability of foreign courts to perform their adjudicatory functions fully as well as do the courts of the United States." *Pain,* 637 F.2d at 797 (quoting Recent Developments, *Federal Courts: Forum Non Conveniens,* 20 Harv.Int'l.L.J. 404, 412 (1979)). As a result, this court finds that the defendants' joint motion to dismiss these actions for *forum non conveniens* must be granted.

An appropriate Order accompanies this Memorandum.

### ORDER

Upon consideration of the defendants' joint motion to dismiss the complaints respecting decedents domiciled in foreign

---

**35.** Because the defendants have agreed to submit to the jurisdiction of various separate foreign countries and because this conditional dismissal does not require any of the plaintiffs to sue in any particular forum, this "dismissal of the liability action in *this* country does not necessarily guarantee that the damages issue[s] will be tried in a consolidated forum with all interested parties present or that all problems of securing evidence will be eliminated." *Pain,* 637 F.2d at 791. Although this leaves some potential problems with trial in some of the foreign forums, these potential problems: 1) are, as noted throughout this opinion, less severe than the problems that would accompany

trial in this country; 2) do not affect this court's view of the inappropriateness of this country as the locus for this litigation, *id.;* and 3) will not prejudice plaintiffs in any way since the choice of forum is within their control.

*Forum non conveniens* analysis is not restricted to the search for a problem-free forum, but is instead aimed at securing the "most convenient" forum for the litigation in question; recognizing that "each case turns on its facts," *Piper,* 102 S.Ct. at 262, this court strongly believes that the facts of this case indicate that the instant conditional dismissal of these cases will result in their being tried in the "most convenient" forums.

countries ("foreign cases")[1] on grounds of *forum non conveniens*, and of the opposition thereto, and of the argument of counsel, and upon consideration of the defendants' stipulating that, in the event the "foreign cases" are dismissed,

(1) they will not contest liability for compensatory damages in any action refiled, at the respective plaintiffs' option, in Saudi Arabia, or in the respective decedent's domicile, or in any country having jurisdiction of the cause of action concerning that decedent pursuant to Article 28 of the Warsaw Convention;

(2) they will not raise the defense of the statute of limitations as to any currently pending action refiled within one year of the date of this Order;

(3) at least one defendant will appear and consent to personal jurisdiction, and defend against each plaintiff's compensatory damages claims arising out of the disaster in the alternative forums in which the action is filed in accordance with Paragraph (1) above;

(4) they will waive any applicable limitation on compensatory damages imposed by the contract of carriage or the Warsaw Convention and its supplementing protocols; and

(5) they will jointly and severally guarantee payment of all judgments awarding compensatory damages, subject to any rights of appeal they may have under applicable law.

and it further appearing to the court that the "foreign cases" should be dismissed without prejudice on the grounds of *forum non conveniens*; it is

HEREBY ORDERED that the "foreign cases" are dismissed without prejudice to being refiled in accordance with the above stipulations; *provided, however*, that should either one of the following occur, the action in which either of the following occurs may be reinstated in this court effective as of the date on which such action was filed in or transferred to this court:

(1) Should defendants fail to comply with any of the terms stated above; or

(2) Should the courts of all the jurisdictions in which the subject action might be refiled, under the terms stated above, refuse or decline to accept jurisdiction of a suit refiled there notwithstanding a defendant's consent to said jurisdiction.

---

1. The "foreign cases" are all *Riyadh* disaster cases presently pending before this court except the following: D.D.C. CA No. 81–1015 (Mohammed Ghafoor); D.D.C. CA No. 81–1173 (Bradley Curtis); C.D.Cal. CA No. 81–4589 TJH (Judicial Panel Conditional Transfer Order of September 24, 1981) (Mohammed Ghafoor).