**Kenneth NOLAN, et al.,**

v.

**The BOEING COMPANY, et al.**

**Civ. A. No. 89–3657.**

United States District Court,
E.D. Louisiana.

Oct. 18, 1989.

Stephen Barnett Murray, Charles Joseph Murray, Murray Law Firm, New Orleans, La., James Teague Crouse, Charles F. Krause, Speiser, Krause & Madole, San Antonio, Tex., for plaintiffs.

Anita M. Warner, Barham & Markle, Howard J. Daigle, Jr., Phelps Dunbar, New Orleans, La., for Boeing Co.

Kenneth H. Laborde, Pulaski, Gieger & Laborde, New Orleans, La., for General Elec. Co. & CFM Intern., Inc.

Victoria Knight McHenry, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., Randal R. Craft, Jr., Haight, Gardner, Poor & Havens, New York City, Kenneth H. Laborde, Pulaski, Gieger & Laborde, New Orleans, La., for Société Nationale D'Étude et de Construction de Moteurs D'Aviation.

## ORDER AND REASONS

FELDMAN, District Judge.

These sixteen consolidated actions for personal injury and wrongful death arise out of the crash of British Midland Airways Flight 92 on route from London to Belfast, Northern Ireland. No American citizens or residents were on board. Defendant The Boeing Company (Boeing), with the support of defendants General Electric Company (GE) and CFM International, Inc. (CFM) and third-party defendant Societe Nationale d'Etude et de Construction de Moteurs d'Aviation, S.A. (SNECMA), moves to dismiss these cases on the ground of forum non conveniens. Because this Court finds that England would provide a more convenient forum, Boeing's Motion to Dismiss on Ground of Forum Non Conveniens is GRANTED.

## BACKGROUND

British Midland Airways, which was not named as a defendant, is a regional airline operating primarily within the United Kingdom. BMA Flight 92, a domestic flight from London to Belfast, crashed near the East Midlands Airport approximately 33 minutes after takeoff from London on January 8, 1989.

BMA Flight 92 was a Boeing 737–400 aircraft. Boeing designed and manufactured the aircraft in Seattle, Washington. The aircraft's engines were manufactured and sold by CFM, a joint enterprise owned by GE and SNECMA. The GE components of the engine were manufactured in Evendale, Ohio, and the SNECMA components were designed and manufactured in Villaroche, France.

Plaintiffs in these cases are 45 surviving relatives of victims of the crash, 76 survivors of the crash, 2 ground observers, and various people who claim loss of consortium from injuries to a survivor. Nearly all of the plaintiffs are U.K. nationals. None of the plaintiffs are citizens of or reside in the United States. These actions were initiated by Kenneth Nolan and Vernon Judkins, who were appointed as the administrators, curators, and tutors of the persons injured or killed in the crash. Mr. Nolan and Mr. Judkins are citizens and residents of New York and Washington respectively.

The accident is being investigated by the Air Accidents Investigation Branch (AAIB) of the U.K. Department of Transport. The AAIB examined the wreckage and reviewed records from the flight data recorder. The AAIB continues to investigate and has scheduled a hearing in England in early 1990. Preliminary reports indicate that the crash occurred because the flight crew shut down the right engine when it was the left engine that was malfunctioning. A key issue in these cases will undoubtedly be whether the crash was caused by pilot error or a flaw in design or manufacture.

## I

██ Boeing urges this Court to dismiss these cases on the ground of forum non conveniens.[1] The doctrine of forum

---

1. Plaintiffs urge the Court to first determine whether SNECMA is immune under the Foreign Sovereign Immunities Act. SNECMA, however, has not raised the question of its immunity. Furthermore, even if SNECMA were immune, the Court must still address the forum non conveniens question since it is Boeing, not SNECMA, that moves to dismiss. *See Forsythe v.*

*Saudi Arabian Airlines Corp.*, 885 F.2d 285 (5th Cir.1989).

Plaintiffs also urge the Court to remand rather than apply the doctrine of forum non conveniens, since plaintiffs did not invoke the jurisdiction of the federal forum. As the Court stated in its Order and Reasons dated September 20, 1989, remand is not appropriate. Conse-

non conveniens "rests upon a court's inherent power to control the parties and cases before it." *In re Air Crash Disaster Near New Orleans, LA*, 821 F.2d 1147, 1153 (5 Cir.1987). It empowers a federal trial court to decline jurisdiction if it appears that the convenience of the parties and the court, and the interests of justice, instruct that the action be tried in another forum. *Air Crash*, 821 F.2d at 1154; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250, 102 S.Ct. 252, 263, 70 L.Ed.2d 419 (1981). The defendants bear the burden of persuasion on all elements of the forum non conveniens analysis. *Air Crash*, 821 F.2d at 1164.

■ Before the Court can determine whether another forum would be more appropriate, it must first determine that an available and adequate forum exists. A forum is available when "the entire case and all parties can come within the jurisdiction of that forum." *Air Crash*, 821 F.2d at 1165. And a forum is adequate when "the parties will not be deprived of all remedies or treated unfairly." *Air Crash*, 821 F.2d at 1165.

■ In this case, the United Kingdom is both an available and an adequate forum. Jurisdiction of the U.K. over the defendants is no obstacle since they have consented to jurisdiction in their papers. Furthermore, this Court can condition dismissal on defendants' consenting to jurisdiction in the U.K., as well as on the waiver of all limitation defenses. The U.K. is an adequate forum because there is no danger that plaintiffs will be deprived of any remedy or treated unfairly. It might be that plaintiffs will not be able to assert a strict liability theory of recovery, and their potential damage awards might be arguably smaller, but that does not defeat dismissal. *Piper Aircraft*, 102 S.Ct. at 265. Nor does the loss of a potential punitive damage award lessen the propriety of dismissal. *Jennings v. Boeing Co.*, 660 F.Supp. 796 (E.D.Pa.1987). "The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry." *Piper Aircraft*, 102 S.Ct. at 261. Since the plaintiffs' remedy in the U.K. is not so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law ought not be given substantial weight. *Piper Aircraft*, 102 S.Ct. at 265; *Ahmed v. Boeing Co.*, 720 F.2d 224, 226 (5 Cir.1983).

## II

Having found that an alternative forum exists, the Court must next balance the private interests of the litigants as well as the public interests of the chosen forum.

The private interests to be considered are well-known:

(i) relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of premises, if a view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive; and (v) enforceability of a judgment if one is obtained.

*Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 878 (5 Cir.1987) (*citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). The public interest factors are equally familiar:

(i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a case in a forum that is familiar with the law that governs the action; (iv) the avoidance of unnecessary problems and conflicts of law, or an application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Gonzalez*, 832 F.2d at 878.

■ In considering the private interest factors, the Court must also weigh in the balance the plaintiffs' choice of forum. Generally, courts should not disturb the plaintiff's choice of forum unless the balance strongly favors the defendants. *Gil-*

quently, the Court is required to address the merits of the forum non conveniens issue.

*bert,* 67 S.Ct. at 843. However, where, as here, the plaintiffs are foreign nationals, their choice of forum is said to merit less deference than that of a resident or citizen plaintiff. *Piper Aircraft,* 102 S.Ct. at 266.

### A.

■ The private interest factors announced in *Gilbert* and *Gonzalez* dictate that the United States is not the most convenient forum. Interest in the relative ease of access to sources of proof certainly favors dismissal. Virtually all of the evidence regarding the crash is located in the United Kingdom. Statements of witnesses, photographs of the wreckage and crash site, air traffic control and cockpit voice recorder tapes, and information from the flight data recorder are all in the U.K. The report of the AAIB and individuals who performed the investigation of the crash are there. All of the evidence regarding the operation and maintenance of the plane by BMA is there. Records and witnesses regarding operational and maintenance history as well as pilot and technician training are at the East Midlands Airport.

Even if plaintiffs intend to base their case on the negligence of defendants in the planning, design, manufacture, assembly, testing, service and inspection of the aircraft and its engines, the evidence regarding the crash itself and the actions of BMA are central to the tragedy.

The case literature leaves little doubt that forum non conveniens attaches itself to these facts. *Piper Aircraft* arose out of an air crash that occurred in Scotland. The plaintiff in that case sued the manufacturers of the airplane and the propellers. Even though records of the design, manufacture, and testing of the plane and its propellers were located in the United States, the Supreme Court held that it was not unreasonable for the district court to conclude that the trial should be held in Scotland. *Piper Aircraft,* 102 S.Ct. at 267. Here, one finds even less of a connection to this forum since none of the airplane's components were designed or manufactured in Louisiana.

Other courts have also favored dismissal on facts implicating more local relationships than are present in this case. *See Cheng v. Boeing Co.,* 708 F.2d 1406 (9 Cir.1983); *Pain v. United Technologies Corp.,* 637 F.2d 775 (D.C.Cir.1980); *Dahl v. United Technologies Corp.,* 632 F.2d 1027 (3 Cir.1980).

In addition to evidence about the crash, substantially all of the damages evidence is also in the United Kingdom. Trial in the U.K. would greatly facilitate access to this evidence. *See Pain v. United Technologies Corp., supra* at 789 (D.C.Cir.1980); *In re Disaster at Riyadh Airport Saudia Arabia, Etc.,* 540 F.Supp. 1141, 1147 (D.C. Dist.1982).

Furthermore, the fact that much of the foreign evidence might be available at trial through mechanisms such as the Hague Convention or the letters rogatory procedure does not tip the balance in favor of retaining jurisdiction. "Regardless of whether or not foreign evidence would be as fully available were trial to be conducted here,", the *Pain* court said, "there can be little doubt that the cost to litigants of employing such procedures would be exceedingly high." *Pain,* 637 F.2d at 790. The ease of access to sources of proof patently favors dismissal to a forum in the United Kingdom. Conditioning dismissal on defendants' making available to plaintiffs all relevant witnesses and documents under their control overcomes any disadvantage to plaintiffs. *Dahl,* 632 F.2d at 1031.

Compulsory process for obtaining unwilling witnesses is an element which must also be mentioned. Since most witnesses and evidence are in the United Kingdom, they are beyond the compulsory process of this Court. No doubt the defendants could obtain testimony by affidavit or deposition, but "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition is to create a condition not satisfactory to court, jury or most litigants." *Perez & Compania (Cataluna), S.A. v. M/V Mexico I,* 826 F.2d 1449, 1453 (5 Cir.1987) (quoting *Gulf Oil Corp.,* 67

S.Ct. at 844). This problem would, again, be overcome by trial in the United Kingdom.[2]

The next private interest factor in this analysis deals with all other problems that generally make trial of the case easy, expeditious and inexpensive. A rather broad consideration. In this case, defendants' inability to join British Midlands Airway as a third-party defendant is a serious practical problem that weighs in favor of dismissal. In *Piper Aircraft*, the Supreme Court stated that the district court "correctly concluded that the problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in Scotland." *Piper Aircraft*, 102 S.Ct. at 267. As in *Piper Aircraft*, if the defendants can show that the accident was not caused by a design defect, but, rather, by the negligence of the pilot or BMA, they will have a forceful defense to liability. Consequently, the presence of BMA in this case is crucial to the presentation of defendants' defense. *See Piper Aircraft*, 102 S.Ct. at 267. It would be far more convenient to resolve all claims in one trial, rather than have defendants pursue an action for indemnity or contribution against BMA overseas, after a lengthy trial here. Furthermore, resolution of defendants' liability in this country and the contribution responsibility of BMA in the United Kingdom could lead to a conflicting resolution of the dispute.

The final private interest factor in this analysis deals with the enforceability of any judgment obtained by the plaintiffs. This Court can protect plaintiffs by conditioning dismissal on defendants' agreement to satisfy any final judgment rendered by a court in the United Kingdom.

Thus, none of the private interest factors in *Gilbert* and *Gonzalez* weigh in favor retaining jurisdiction over these cases.

### B.

Turning to the public interest factors, the Court finds that they too weigh in favor of dismissal. The interest in minimizing administrative difficulties flowing from court congestion certainly favors dismissal here. There are over 100 plaintiffs in these sixteen cases and the trial could be expected to last months. The Court sees no justification for imposing such a burden on a forum that has absolutely no connection with the incident or the parties. *See Disaster at Riyadh Airport*, 540 F.Supp. at 1152. As in *Disaster at Riyadh Airport*, the plane in question was owned and operated by a foreign corporation, the plane was maintained by a foreign corporation, the service and maintenance records are in a foreign country, the accident occurred on a domestic flight in a foreign country, the aviation board of a foreign country investigated the accident, and all real parties in interest reside outside the United States. *Disaster at Riyadh Airport*, 540 F.Supp. at 1152. Considering this tragedy's slight contacts with the United States and its complete lack of contact with Louisiana, in comparison with the extensive contacts these events have with the United Kingdom, the record is without any justification for imposing the burden of this litigation on this forum.

The interest in having this controversy resolved locally also favors dismissal. Because none of the plaintiffs are residents or citizens of the United States, the American interest in these cases is obviously slight. On the other hand, the interest of the United Kingdom is demonstrably great. The accident occurred in England. Nearly all of the victims were citizens of the U.K. As the Supreme Court stated in *Gilbert* and reaffirmed in *Piper Aircraft*, "there is a local interest in having localized controversies decided at home." *Piper Aircraft*, 102 S.Ct. at 268. This country's interest in insuring that American manufacturers are deterred from producing defective products is not sufficient to justify the enormous commitment of judicial resources needed to try these cases here. *See Piper Aircraft*, 102 S.Ct. at 268; *Kryvicky v. Scandinavi-*

---

**2.** The need to view the crash site, to the extent that that would be necessary, also favors trial in the United Kingdom.

*an Airlines System,* 807 F.2d 514, 517 (6 Cir.1986).

The interests in avoiding problems that could develop because of the application of foreign law, and in having the trial in a forum that is familiar with the governing law, also suggest dismissal. The need to apply foreign law points unalterably to dismissal. *Piper Aircraft,* 102 S.Ct. at 268. It is likely that British law would govern the resolution of these cases. Louisiana adopts the "significant relationship test" found in the Restatement (Second) of Conflicts of Laws § 145. *Jagers v. Royal Indemnity Co.,* 276 So.2d 309 (La.1973). The Fifth Circuit applied the Restatement in *Price v. Litton Systems, Inc.,* 784 F.2d 600, 604 (5 Cir.1986), which was a wrongful death action, to find that the law of the state in which the accident occurred would apply rather than the law of the states in which a design or manufacturing defect had occurred. In this case, as in *Price,* two important factors point to the application of foreign law. First, England is the place of the injury. Second, England is the focus of the relationship of the parties. Because the United Kingdom has a more substantial relationship to these cases than do the states in which Boeing and GE designed and manufactured their products, or the states in which they are incorporated, the law of the United Kingdom will most likely apply. *Price,* 784 F.2d at 604. *See also Rubenstein v. Piper Aircraft Corp.,* 587 F.Supp. 460 (S.D.Fla.1984).[3]

The final public interest factor, the interest in avoiding the unfair burdening of citizens in an unrelated forum with jury duty, also equates to dismissal. The court in *Disaster at Riyadh Airport* observed that "jury duty ought not to be imposed upon the people of the United States nor should United States courts be clogged by processing these cases when the underlying accident has such tenuous contacts to the United States." *Disaster at Riyadh Airport,* 540 F.Supp. at 1152. This Court agrees. Jury duty certainly ought not be imposed on the citizens of Louisiana since this controversy has no connection whatsoever to this state. *See Pain v. United Technologies Corp.,* 637 F.2d 775, 792 (D.C.Cir.1980).

### III

Both private and public interests weigh heavily in favor of trial in the United Kingdom. To protect plaintiffs from the burdens of refiling their suit in another country at this time, the Court's dismissal is conditional. Accordingly, Boeing's Motion to Dismiss on Ground of Forum Non Conveniens is GRANTED provided that (i) defendants submit to service of process and jurisdiction in the appropriate United Kingdom forum; (ii) plaintiffs shall file suit within 120 days of the order of dismissal; (iii) defendants shall formally waive in the U.K. proceedings any statute of limitations defense that has matured since the commencement of these actions in the Civil District Court for the Parish of Orleans; (iv) defendants shall agree to make available in the U.K. all witnesses and documents within its control; (v) defendants shall agree to satisfy any final judgment rendered by the U.K. court; and (vi) should defendants fail to promptly satisfy any of these conditions, this Court will resume jurisdiction upon request and reopen these cases.[4]

---

3. However, even if the law of the states in which the airplane and its engines were designed and manufactured were to apply, the balance of the remaining public interest factors still weighs in favor of dismissal.

4. Plaintiffs urge the Court to apply the forum non conveniens law of Louisiana. In *Air Crash,* 821 F.2d at 1159, the Fifth Circuit held that "a federal court sitting in a diversity action is required to apply the federal law of forum non conveniens." Of course, if the basis of jurisdiction is a federal question, the Court will apply federal law. In neither case may the Court apply state law.