**Julio Jasso ZERMENO,
et al., Plaintiff,**

v.

**MCDONNELL DOUGLAS
CORPORATION, et
al., Defendants.**

No. CIV.A.H–02–2862.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 18, 2003.

Peter Michael Kelly, Kelly Jeremiah et al, Houston, TX, for plaintiffs.

David J Beck, Beck Redden and Secrest, Houston, TX, John D Dillow, Perkins Coie LLP, Seattle, WA, for McDonnell Douglas Corporation, The Boeing Company, defendants.

William V Dalferes, Jr, McGlinchey Stafford, New Orleans, LA, Erin F Parkinson, Vanessa Lee Vance, McGlinchey Stafford PLLC, Houston, TX, John D. Dillow, Perkins Coie, LLP, Seattle, WA, for Nasco Aircraft Brake, Inc., defendant.

John A Camp, Reed Smith LLP, Pittsburgh, PA, John D. Dillow, Perkins Coie, LLP, Seattle, WA, for Westinghouse Air Brake, Inc., defendant.

Martin E Rose, Rose*Walker LLP, Dallas, TX, for Crane Corp., defendant.

Jad J. Stepp, Houston, TX, John D. Dillow, Perkins Coie, LLP, Seattle, WA, for First Security Bank of Utah, N.A.,

Wells Fargo Bank, N.A., Aerovias de Mexico SA de CV, Wells Fargo Bank Northwest, N.A., defendants.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

This case arises from an airplane accident in Reynosa, Mexico. On October 6, 2000, an AeroMexico flight from Mexico City landed at the Reynosa airport during bad weather. The aircraft left the runway during the landing and struck the house where Julio Jasso Zermeno and his family lived. Zermeno's wife and three of his children were in the house when the aircraft struck and died in the accident. Julio Jasso Zermeno filed suit in Texas state court on behalf of himself and his minor son, Julio Cesar de los Santos. Plaintiffs sued the aircraft manufacturer and designer, McDonnell Douglas Corporation and Boeing Company; the owner and lessor, First Security Bank of Utah, N.A., Wells Fargo Bank Northwest, N.A., and Wells Fargo Bank Northwest, N.A.; and the operator, Aerovias de Mexico, S.A. de C.V. ("AeroMexico").[1] Plaintiffs asserted a Texas common law negligence and strict liability claim against McDonnell Douglas and its parent company, Boeing, and First Security and a negligence claim against AeroMexico. Plaintiffs sought damages under the Texas Wrongful Death Statute, Tex. Civ. Prac. & Rem.Code § 71.001 *et seq.*, and under the Texas Survival Statute, Tex. Civ. Prac. & Rem.Code § 71.021 *et seq.* Plaintiffs subsequently added, and have moved for an extension of time to serve. two defendants, Crane Corporation and Hydro–Aire, Inc., alleging that they were involved in the design and manufacture of the aircraft braking system. (Docket Entries Nos. 24, 26, 36, 61).

Defendants removed the case to federal court, arguing that AeroMexico had been fraudulently joined and that the remaining parties were completely diverse to plaintiffs, giving this court jurisdiction.[2] Plaintiffs moved to remand to Texas state court.[3] Before this court could rule on plaintiffs' motion to remand, defendants moved to dismiss on the grounds of *forum non conveniens.* (Docket Entries No. 34, 41). Plaintiffs filed a reply to this motion; defendants filed a response to the reply. Plaintiffs have moved for leave to file a sur-reply to defendants' response; defendants oppose this motion.

Based on a careful review of the pleadings; the motions, responses, and replies; the record evidence; and the applicable law, this court DENIES the motions by Crane and Hydro–Aire to dismiss for improper service and GRANTS plaintiffs' motion to extend time to effect service on these defendants. This courts conditionally GRANTS defendants' motion to dismiss on the basis of *forum non conveniens.* Plaintiffs' motion to remand is MOOT.[4]

The reasons for these rulings are set out below.

---

1. Plaintiffs also sued Honeywell International, Inc.; Nasco Aircraft Brake, Inc.; and Westinghouse Air Brake Technologies, Inc, but subsequently dismissed those claims, without prejudice.

2. Plaintiffs are citizens of Mexico, and defendant AeroMexico has its principal place of business in Mexico. A federal district court does not have diversity jurisdiction over a controversy involving a foreign plaintiff and a foreign defendant. *See* 28 U.S.C. § 1332(a).

3. Plaintiffs moved in the alternative to consolidate this case with another case pending in the Southern District of Texas at the time the motion to remand was filed. (Docket Entry No. 12). That case, *Petit v. AeroMexico* (Case Number 01cv266), has since settled, mooting plaintiffs' motion to consolidate.

4. Plaintiffs' motion for leave to file a surreply is GRANTED.

## I. Background

On October 6, 2000, a DC–9 aircraft, leased by AeroMexico and operating as AeroMexico Flight 250, flew from Mexico City to Reynosa, Mexico. (Docket Entry No. 1, ¶ 4.1). A nearby tropical storm made the weather in Reynosa poor. (Docket Entry No. 34, Ex. B, ¶ 2.1.6). As the aircraft landed in Reynosa, it slid off the end of the runway and crashed into plaintiffs' house, killing Zermeno's wife and three of his children. (Docket Entry No. 1, ¶ 4.5). Zermeno and his son Julio were not home at the time.

The aircraft was designed and manufactured by McDonnell Douglas, a Maryland corporation with its headquarters in Illinois and with operations in Kansas, Oklahoma, Pennsylvania, and Washington, D.C. (Docket Entry No. 1, ¶ 7). McDonnell Douglas is a wholly-owned subsidiary of Boeing Company, which is headquartered in Illinois and which has operations in Washington, California, Missouri, and Kansas. (*Id.*, ¶ 6; Docket Entry No. 2, ¶ 6). Plaintiffs allege that the braking system was designed by or included components designed by Crane and/or Hydro–Aire. (Docket Entry No. 23, ¶ 5.1). Crane is a Delaware corporation with its principal place of business in Connecticut. (*Id.* at ¶ 2.8). Hydro–Aire is a Delaware corporation with its principal place of business in California. (*Id.* at ¶ 2.9). The plane was owned by defendant Wells Fargo Bank Northwest, N.A. (the successor-in-interest to First Security Bank of Utah, N.A.), a national banking association with its principal place of business in Utah and a subsidiary of defendant Wells Fargo, N.A., a national banking association with its principal place of business in California. (Docket Entry No. 23, ¶ 6.1; Docket Entry No. 1, ¶ 8; Docket Entry No. 51, Ex. E).

AeroMexico leased the aircraft from Wells Fargo and was operating it when the crash occurred. (Docket Entry No. 23, ¶¶ 2.10, 7.1; 3.5). AeroMexico is a Mexican corporation with its principal place of business in Mexico City. (Docket Entry No. 65 (Declaration of Pablo R. Lopez, Vice–President of Engineering for Aero-Mexico), ¶¶ 4, 10; Ex. B). AeroMexico's Maintenance Programs Department is located in Mexico City. (*Id.* at Ex. D). AeroMexico has a foreign air carrier permit granted by the United States Department of Transportation, allowing it to operate flights between points in Mexico and the United States. (*Id.* at ¶ 4, Ex. B). Aero-Mexico also has an office in Houston, Texas. (Docket Entry No. 51, Ex. N). Juan Alejandro Corzo y Rosales, the pilot of the aircraft, is a Mexican citizen and lives in Mexico. (Docket Entry No. 63, ¶ 3). The accident occurred at the conclusion of a flight that originated and ended in Mexico.

The Mexican Civil Aeronautics Administration investigated the accident and issued a report on May 7, 2001. (Docket Entry No. 34, Ex. B). The report concluded that the probable cause of the accident was "landing and long contact, after a high approach with excessive speed as a result of a non-precision approach onto a flooded runway and under adverse meteorological conditions, [causing] the aircraft [to veer] off to the opposite end [of the runway]." (*Id.*). The Mexican authorities investigating the accident sent parts of the braking and antiskid systems, as well as the flight voice and data recorders, to laboratories in the United States for analysis. (Docket Entry No. 34, Ex. B (Accident Report) at ¶¶ 1.11.1–1.11.2, 1.17.3). The report does not indicate that any other parts of the aircraft were sent out of Mexico. The tests of the braking system indicated that it functioned properly at the time of the accident. (*Id.* at ¶ 1.17.4).

Most of the physical evidence and information the Mexican authorities used in

investigating the crash was located in Mexico. The evidence included the aircraft itself and tape recordings of conversations between air traffic controllers in Monterrey and Reynosa. (*Id.* at ¶ 1.9). The Federal Attorney General's Office in Reynosa retained medical information about the decedents and the injured passengers. (*Id.* at ¶ 1.13). The aircraft maintenance records were kept at AeroMexico's maintenance headquarters in Mexico City. (Docket Entry No. 64, Declaration of Pablo Lopez, Vice President of Engineering for AeroMexico, ¶¶ 11–12).

After the accident, Zermeno executed settlement agreements and releases with defendant AeroMexico on behalf of himself and his surviving son. Zermeno signed agreements releasing all of his claims against AeroMexico in return for Mex$1,000,000, and releasing his son's claims for Mex$600,000. (Docket Entry No. 34, Ex. C). The settlement agreements stated that Zermeno had received counsel and was "free of all coercion and defect in consent" when he executed the documents. (*Id.*). Zermeno contends that the releases are ineffective. He asserts that he initially rejected AeroMexico's attempts to have him sign releases. (Docket Entry No. 51, Ex. B (English translation of Affidavit of Julio Jasso Zermeno)). He alleges that AeroMexico representatives took him to a hotel bar, gave him several glasses of whiskey, and tried again to have him sign the releases, but that he again refused. Zermeno claims that two days later, his attorney, Armendariz, again pressured Zermeno to sign the releases. Zermeno alleges that although his sister recommended Armendariz, AeroMexico paid the lawyer's fees. The next day, Zermeno finally agreed to sign the releases on behalf of himself and his son. Zermeno asserts that his release is void because he signed under duress and that his minor son's release is invalid because it was made without judicial supervision and approval.

In support of the removal, defendants argues that the releases are valid and binding under applicable Mexican law and preclude plaintiffs' claims against AeroMexico. (Docket Entry No. 33, pp. 13–16). Defendants also contend that under the applicable Mexican law, the statute of limitations has run and precludes plaintiffs' recovery against AeroMexico. (*Id.* at p. 11). Defendants contend that plaintiffs fraudulently joined AeroMexico to defeat federal diversity jurisdiction and urge this court to deny plaintiffs' motion to remand. (*Id.* at pp. 7–8). Plaintiffs respond that AeroMexico has not been fraudulently joined because defendants have not conclusively shows that the releases Zermeno executed are invalid or that the claims against AeroMexico are time-barred. (Docket Entry No. 12, ¶¶ 6–7).

Defendants have also moved to dismiss this case on the basis of *forum non conveniens,* arguing that Mexico would be a more convenient and appropriate forum to litigate this case. Plaintiffs respond that there are significant connections between the United States and this case, making an American forum appropriate. Plaintiffs also argue that this court must decide the motion to remand before considering the motion to dismiss under *forum non conveniens;* defendants dispute this contention.

The order of deciding the motions must be decided first.

## II. The Order of Decision: The Motion to Remand or to Dismiss?

### A. The Criteria for Deciding Which Motion to Decide First

■ The Supreme Court in *Ruhrgas v. Marathon Oil Co.,* 526 U.S. 574, 578, 119 S.Ct. 1563, 1567, 143 L.Ed.2d 760 (1999)

stated that threshold motions "in cases removed from state court to federal court ... [present] no unyielding jurisdictional hierarchy." In *Ruhrgas,* the Court held that a district court could decide a challenge to personal jurisdiction over the parties before deciding whether it had subject matter jurisdiction over the case. Subject matter jurisdiction necessarily precludes a ruling on the merits, reasoned the Court, but that did not dictate the sequence of deciding the threshold issues. *Id.* at 584, 119 S.Ct. at 1570. "It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits." *Id.* at 585, 119 S.Ct. at 1570. The Court stated that if the personal jurisdiction issue presented no complex question, but the subject matter jurisdiction issue was complicated, district courts do not abuse their discretion by turning to the easier personal jurisdiction question before assuring that subject matter jurisdiction is present. *Id.* at 588, 119 S.Ct. at 1572.

Courts both before and after *Ruhrgas* have dismissed cases on *forum non conveniens* grounds before deciding challenges to subject matter jurisdiction. "[A] court that dismisses on ... non-merits grounds such as *forum non conveniens* and personal jurisdiction, before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates ... separation of powers principles." *In re Papandreou,* 139 F.3d 247, 255 (D.C.Cir.1998). *See also, In the Matter of the Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine,* 311 F.3d 488, 497 (2d Cir.2002) (holding that a district court could dismiss under *forum non conveniens* before considering questions of personal and subject matter jurisdiction).

Plaintiffs contend that this court must consider subject matter jurisdiction before it considers whether to dismiss on the basis of *forum non conveniens.* Plaintiffs cite *Torres v. Southern Peru Copper Corp.,* 113 F.3d 540, 542 (5th Cir.1997), in which the Fifth Circuit stated that it has "repeatedly instructed that before proceeding with a case, federal trial and appellate courts have the duty to examine the basis for their subject matter jurisdiction ...." Before the Supreme Court decided *Ruhrgas,* the Fifth Circuit stated that a district court could not rule on a question of *forum non conveniens* if it did not have subject matter jurisdiction. *Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1542 (5th Cir. 1991). The continuing vitality of *Torres and Baris* is suspect in light of the subsequent rulings in *Ruhrgas, In re Papandreou,* and *Matter of Arbitration.* Based on these later cases, dismissal on basis of *forum non conveniens* before considering subject matter jurisdiction is permissible, if the subject matter jurisdiction inquiry is complicated and the *forum non conveniens* inquiry is more easily resolved.

**B. The Complexities of the Motion to Remand**

 Title 28 U.S.C. § 1441(a) provides:

any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Federal diversity subject matter jurisdiction may not be invoked in a suit between aliens of the United States. *Chick Kam Choo v. Exxon Corp.,* 764 F.2d 1148, 1149 (5th Cir.1985). For the purpose of diversity jurisdiction, a foreign corporation is deemed a citizen of the place where it was incorporated and where it has its principal place of business. *Panalpina Welttrans-*

*port GmBh v. Geosource, Inc.,* 764 F.2d 352, 354 (5th Cir.1985). A corporation incorporated outside the United States is deemed an alien for diversity purposes. *Chick Kam Choo,* 764 F.2d at 1152 (lack of diversity jurisdiction between citizen of Singapore and Liberian corporation with principal place of business in New Jersey). In this case, AeroMexico and plaintiffs are citizens of Mexico. If AeroMexico is fraudulently joined, and its citizenship disregarded, this court has federal removal jurisdiction based on diversity.

■ "The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. Unit A Dec.1981). To show fraudulent joinder, "the removing party must demonstrate either 'outright fraud in the plaintiff's recitation of jurisdictional facts' or that 'there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court.'" *Rodriguez v. Sabatino,* 120 F.3d 589, 591 (5th Cir.1997) (quoting *Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995) and *Cavallini v. State Farm Mut. Auto Ins.,* 44 F.3d 256, 259 (5th Cir.1995)) (citations omitted). "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the non-removing party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned." *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990). However, the courts have more recently emphasized that the possibility of recovery must be reasonable, not merely hypothetical or speculative. "If there is 'arguably a reasonable basis for predicting that the state law might impose liability on the facts involved,' then there is no fraudulent joinder." *Badon v. RJR Nabisco Inc.,* 236 F.3d 282, 286 (5th Cir.2000) (quoting *Jer-*

*nigan v. Ashland Oil Inc.,* 989 F.2d 812, 816 (5th Cir.1993)). This possibility must be reasonable, not merely theoretical. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir.2002). Before refusing to remand a case, a district court must find that there is no reasonable possibility that state law would allow recovery against a nondiverse defendant, based on the facts alleged. The question is not whether plaintiffs will probably prevail in state court, but whether there is a reasonable possibility that the state court could find that plaintiffs stated at least one valid cause of action against the nondiverse defendant. *See Rodriguez,* 120 F.3d at 591.

■ To decide whether a defendant has been fraudulently joined, the district court can employ a summary judgment-like procedure that allows it to pierce the pleadings and examine other evidence for evidence of the possibility that the plaintiff can state a claim under state law against a nondiverse defendant. *See B., Inc.,* 663 F.2d at 549 n. 9. In this case, plaintiffs have submitted Zermeno's affidavit; affidavits of Mexican law experts; and various documents regarding the history and ownership of the aircraft. Defendants have submitted copies of the accident report; copies of the releases Zermeno executed; and affidavits of Mexican law experts. If the facts set out in plaintiffs' complaint, with the other materials submitted for this court's summary-judgment like consideration, fail to show a reasonable possibility that plaintiffs could succeed in establishing a claim against AeroMexico, its citizenship cannot be disregarded. *See id.* at 247–48; 313 F.3d at 311–12. "Whether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery." *Griggs v. State Farm Lloyds,* 181 F.3d 694, 701 (5th

Cir.1999). This court's task on the remand motion is to determine whether there is any reasonable basis for predicting that plaintiffs might be able to establish their claim for liability against AeroMexico. *Travis v. Irby,* 2003 WL 23102, *2 (5th Cir.(Miss.)2003).

Defendants argue that there is no reasonable possibility that a Texas state court would recognize a valid cause of action against AeroMexico. Defendants contend that the settlement agreements Zermeno executed for himself and his son releasing AeroMexico from liability are valid under Mexican law and preclude any claim against AeroMexico in Texas state court. (Docket Entry No. 33, pp. 13–16). It is undisputed that Zermeno accepted the money AeroMexico paid in consideration of the releases. Defendants argue that under Mexican law, acceptance of the funds is an additional bar to any claim against AeroMexico. (*Id.* at pp. 12–13). Finally, defendants argue that under Mexican tort liability law, which they contend applies in this case, there is a one-year statute of limitations, which lapsed before plaintiffs filed suit. (*Id.* at pp. 11–12). Plaintiffs respond by arguing that defendants have failed to meet their burden of showing that plaintiffs have no reasonable possibility of establishing a cause of action against defendant AeroMexico. Plaintiffs argue that Texas law applies, and that even if Mexican law applies, the releases are void or voidable. Plaintiffs argue that the release Zermeno executed on his son's behalf is invalid because it was made without judicial supervision and that Zermeno's own release is voidable because it was made under duress. (Docket Entry No. 48, pp. 6–9). Plaintiffs also contend that the applicable Mexican tort damages law provides a two-year statute of limitations. (*Id.* at pp. 5–6).

■ The motion to remand turns in large measure on the choice of law and the validity of the settlements Zermeno executed with AeroMexico. (Docket Entry No. 33, pp. 8–9, 13–16; Docket Entry No. 48, pp. 6–8). If the releases are valid, plaintiffs will have no reasonable possibility of establishing a claim against AeroMexico in state court and defendants will have met their burden of proving fraudulent joinder.

■ Under Texas law, a release is a contract, to be interpreted under contract law principles. *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990); *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 178 (Tex.1997). In construing a contract, Texas courts apply the law of the forum with the "most significant relationship" to the contract in question.[5] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6; *Access Telecom, Inc. v. MCI Telecommunications Corp.,* 197 F.3d 694, 707 (5th Cir.1999)(citing *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984)). Texas courts examine the section 6 principles by looking to specific contacts or "factors" listed in RESTATEMENT (SECOND) OF CONFLICT OF

---

**5.** Section 6 lists the general policy factors for determining the forum with the "most significant relationship" to the contract. The factors are:
 (a) the needs of the interstate and international systems,
 (b) the relevant policies of the forum,
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

 (d) the protection of justified expectations,
 (e) the basic policies underlying the particular field of law,
 (f) certainty, predictability and uniformity of result, and
 (g) ease in the determination and application of the law to be applied.
RESTATEMENT (SECOND) OF CONTRACTS § 6(2) (1971).

Laws § 188 to determine which law governs. *See Mayo v. Hartford Life Ins. Co.,* 220 F.Supp.2d 714, 730 (S.D.Tex.2002); *Minnesota Min. & Mfg. Co. v. Nishika, Ltd.,* 953 S.W.2d 733, 735–36 (Tex.1997). The relevant factors are:

(a) the place of contracting;

(b) the place of negotiation of the contract;

(c) the place of performance;

(d) the location of the subject matter of the contract; and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1971).

The releases were negotiated and executed in Mexico, in the presence of a Mexican Notary Public, before litigation began in the United States. (Docket Entry No. 33, Ex. C, Release of AeroMexico by Zermeno on his son's behalf and Release of AeroMexico by Zermeno; Ex. D, Report of Notary Public Rosa del Carmen Adame Ortiz). The place of performance is presumably anywhere plaintiffs could have filed suit against AeroMexico; the releases "grant[ed] the broadest pardon under the law" to AeroMexico. (*Id.* at Ex. C, Release of AeroMexico by Zermeno on his son's behalf and Release of AeroMexico by Zermeno). Plaintiffs are Mexican citizens and domiciliaries; AeroMexico is headquartered in and has its principal place of business in Mexico City. Applying the Restatement factors leads to the conclusion that Mexican law likely governs the validity and voidability of the releases. *See Amoco Prod. Co. v. Hydroblast Corp.,* 90 F.Supp.2d 727, 735–36 (N.D.Tex.1999) (New Mexico law applied where insurance contract was negotiated in New Mexico, both signatories to the contract were citizens of New Mexico, and New Mexico had a significant interest in regulating in-state insurance agencies); *Minnesota Mining & Mfg. Co.,* 953 S.W.2d at 737 (Minnesota law applied where several rounds of negotiations took place in Minnesota, the parties entered into the contract in Minnesota, and the parties performed part of the contract in Minnesota). This court would be faced with a complex and time-consuming task in deciding whether the releases are valid under Mexican contract law, requiring an analysis of Zermeno's claim that duress made his release void and of the claim that the absence of judicial supervision and approval made his son's release invalid.

The motion to remand also turns on the application of the tort law under which plaintiffs seek recovery. Defendants contend that Mexican tort law applies and plaintiffs' claim is time-barred. (Docket Entry No. 33, pp. 11–13; Docket Entry No. 48, pp. 5–6). Plaintiffs contend that their tort claim is governed by Texas law and is not time-barred. Alternatively, plaintiffs contend that their tort claim arises under Mexican tort law and is not precluded. This court must first determine whether Mexican tort law or Texas tort law applies. If Mexican tort law applies, this court must decide whether plaintiffs' claim is time-barred.

Texas courts follow the "most significant relationship" test set out in the RESTATEMENT (SECOND) OF CONFLICT of LAWS § 145 in choosing the applicable law in a tort case. *Torrington v. Stutzman,* 46 S.W.3d 829, 848 (Tex.2000); *Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex.1979). Some of the relevant contacts to take into account in a tort case include:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship, if any, between the parties is centered.

*Id.* (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971)).

The injury in this case occurred in Mexico. None of the conduct causing the injury occurred in Texas; the accident occurred in Mexico, the aircraft was maintained in Mexico, and the aircraft was neither designed nor manufactured in Texas. The plaintiffs and the deceased family members are citizens and residents of Mexico. Mexico has a strong interest in protecting its citizens. AeroMexico is a Mexican airline; the pilot and aircraft maintenance and operations employees are Mexican; and the aircraft maintenance, personnel training, and operations all occurred in Mexico. Mexico has a strong interest in regulating its domestic airlines. The parties' relationship is limited to the accident and the settlement process that followed, all of which occurred in Mexico. The Restatement factors support the application of Mexican tort law to this case.

The case law supports this conclusion. In *Price v. Litton Sys., Inc.*, 784 F.2d 600 (5th Cir.1986), the Fifth Circuit applied section 145 in a tort action in finding that the state where the accident occurred had a more significant relationship to the occurrence than the state where the machine at issue was designed and manufactured. *See also Baumgart v. Fairchild Aircraft Corp.*, 1991 WL 487242, *8 (W.D.Tex.), *aff'd* 981 F.2d 824, 837 (5th Cir. 1993)(where Texas-built aircraft crashed in Germany and injured German citizens, German law, rather than Texas law, would likely apply under most significant relationship test); *Nolan v. Boeing Co.*, 762 F.Supp. 680, 685 (E.D.La.1989), *aff'd* 919 F.2d 1058, 1069 (5th Cir.1990)(where plain-

tiffs were English citizens injured in the crash of an American-built aircraft in England, English law would likely apply under the most significant relationship test). The facts and the case law show that Mexican tort law most likely applies to this case.

In order to decide whether plaintiffs' claims are time-barred, this court will have to decide which section of Mexican tort law applies to the facts of this case. The decision as to which statute of limitations period under Mexican tort law applies to plaintiffs' claims is, like the decision on the validity of the releases under Mexican law, complex and time-consuming.

In order to decide plaintiffs' motion to remand, this court must decide whether plaintiffs have a reasonable possibility of stating a claim in state court. To decide this question, this court must consider whether the plaintiffs' releases are valid under Mexican law and whether the plaintiffs' claims are barred by the applicable statute of limitations. Determining the Mexican tort and contract law to apply in this case, and with what result, would be complicated and time-consuming for this court. The *forum non conveniens* inquiry, by contrast, is straightforward. It requires this court to apply a set of well-established principles and a well-established body of American case law to undisputed facts. Because of the complicated nature of the inquiry required to decide the motion to remand and the need to apply Mexican law to decide that motion, in contrast to the relatively straightforward nature of the *forum non conveniens* inquiry, this court will take up the *forum non conveniens* motion first.

### III. The Motion to Dismiss

#### A. The *Forum Non Conveniens* Dismissal Standard

■ A federal court sitting in a diversity action must apply the federal law of

*forum non conveniens* in deciding a motion to dismiss a plaintiff's case in favor of a foreign forum. *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1159 (5th Cir.1987)(en banc), *vacated on other grounds sub. nom., Pan Am. World Airways, Inc. v. Lopez,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *reinstated except as to damages by In re Air Crash Disaster Near New Orleans, La.,* 883 F.2d 17 (5th Cir.1989)(en banc); *De Aguilar v. Boeing Co.,* 11 F.3d 55, 59 (5th Cir.1993). "The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a *clear abuse of discretion;* where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419(1981) (emphasis omitted and added); *see also McLennan v. Am. Eurocopter Corp.,* 245 F.3d 403, 423 (5th Cir.2001).

■ The "doctrine of forum non conveniens proceed[s] from [the] premise [that] ... [i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 722, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (emphasis omitted). Building on its holding in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court set out the framework for analyzing *forum non conveniens* in an international context in *Piper Aircraft.* First, "the court must determine whether there exists an alternative forum." *Piper Aircraft,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265. The court considers the amenability of the defendant to service of process and availability of an adequate remedy in the alternative forum. *See Piper Aircraft,* 454 U.S. at 254–55 n.

22, 102 S.Ct. at 265; *see also McLennan,* 245 F.3d at 424. Second, the court must determine which forum is best suited to the litigation. *See id.* at 255, 102 S.Ct. at 266. In performing this second step, a court must consider whether "certain private and public interest factors weigh in favor of dismissal." *McLennan,* 245 F.3d at 424. The court must bear in mind that "the ultimate inquiry is where trial will best serve the convenience of the parties and the interests of justice." *In re Air Crash,* 821 F.2d at 1162 (quoting *Koster v. Am. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947)). The defendants bear the burden of proof on all elements of the *forum non conveniens* analysis. *In re Air Crash,* 821 F.2d at 1164.

■ The "private interest" factors include:

(i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of [the] premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive ... enforceability of judgment [; and whether] the plaintiff [has sought to] "vex," "harass," or "oppress" the defendant.

*Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843; *In re Air Crash,* 821 F.2d at 1162. In addition, "a foreign plaintiff's selection of an American forum deserves less deference than an American citizen's selection of his home forum." *Baumgart,* 981 F.2d at 836 n.12 (quoting *Piper Aircraft,* 454 U.S. at 256, 102 S.Ct. at 265–266). "When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable." *Id.*

The "public interest" factors include:

> (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having a the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.

*See Dickson Marine, Inc. v. Panalpina, Inc.,* 179 F.3d 331, 342 (5th Cir.1999); *In re Air Crash,* 821 F.2d at 1162–63. These factors are applied to the record before this court.

### B. The Adequacy and Availability of the Foreign Forum

A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. *Baumgart,* 981 F.2d at 835, quoting *In re Air Crash,* 821 F.2d at 1164. A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the all the benefits of an American court. *Id.*

Plaintiffs contend that Mexico is not an adequate alternative forum for this litigation. Plaintiffs argue that certain rules of Mexican civil procedure and evidence make that forum inadequate. For example, plaintiffs contend that photocopies of relevant documents and photographs not taken in the presence of a Mexican Notary Public will not be admissible. (Docket Entry No. 49, p. 11). The applicable statute of limitations under Mexican law is two years; if this case is dismissed, plaintiffs assert that they will be unable to file suit on their negligence claims in Mexi-

co. (*Id.*). Plaintiffs also note that relevant English documents will have to be translated into Spanish if the case is brought in Mexico, at great expense. (*Id.*). Finally, plaintiffs allege that a jury trial would not be available. (*Id.*).

Defendants respond that plaintiffs will not be deprived of all remedies in a Mexican court. Defendants Boeing, McDonnell Douglas, First Security, Wells Fargo Northwest, Wells Fargo, and AeroMexico agree to waive any statute of limitations defenses that accrued after the filing of this suit. (Docket Entry No. 54, at n.1; Docket Entry No. 66, ¶ 6). Defendants argue that photocopies of documents are admissible under Mexican law and stipulate that they will not challenge the authenticity of their own documents if offered as evidence in a Mexican court. (Docket Entry No. 54, p. 11).

Plaintiffs and defendant Aero-Mexico are clearly within the jurisdiction of the Mexican courts. Defendants Boeing, McDonnell Douglas, First Security, Wells Fargo Northwest, and Wells Fargo have stipulated that they will submit to the jurisdiction of the Mexican courts. (Docket Entry No. 34, p. 3; Docket Entry No. 44, ¶ 6). "A defendant's submission to the jurisdiction of an alternate forum renders that forum available for the purposes of *forum non conveniens* analysis." *Veba–Chemie A.G. v. M/V Getafix,* 711 F.2d 1243, 1245 (5th Cir.1983) (citations omitted); *Gonzalez v. Chrysler Corp.,* 301 F.3d 377, n. 3 (5th Cir.2002). This court may condition dismissal on *forum non conveniens* grounds on the consent of all of the defendants to jurisdiction in Mexico and waiver of the applicable statute of limitations defenses. *Nolan,* 762 F.Supp. at 682, *aff'd* 919 F.2d at 1069; *Vasquez v. Bridgestone/Firestone,* 192 F.Supp.2d 715, 723 (E.D.Tex.2001). This court finds that with defendants' consent to submit to jurisdic-

tion in Mexico and to waive applicable statute of limitation defenses, Mexico is an available forum for this litigation. Boeing, McDonnell Douglas, First Security, Wells Fargo Northwest, and Wells Fargo have made both agreements. AeroMexico has agreed to waive applicable statute of limitations defenses.

Plaintiffs have recently added two defendants, Crane and Hydro–Aire, which have not yet stipulated that they will submit to the jurisdiction of the Mexican courts or made any agreement as to limitations. Mexico's availability as a forum for this litigation is conditioned upon Crane and Hydro–Aire submitting to the jurisdiction of the Mexican courts and agreeing to waive limitations defenses that accrued after this suit was filed.

■ Numerous Fifth Circuit cases have held that Mexico is an adequate forum for tort litigation involving American-made products, despite differences in Mexican and American substantive and procedural law. *See de Aguilar v. Boeing Co.,* 806 F.Supp. 139 (E.D.Tex.1992)(dismissing on *forum non conveniens* grounds a case involving the crash in Mexico of an American-designed and manufactured Boeing 727 aircraft operated by a Mexican airline), *aff'd* 11 F.3d 55 (5th Cir.1993). *See also Gonzalez,* 301 F.3d 377 (affirming the dismissal of suit against American auto manufacturer on the basis of *forum non conveniens* in case arising from auto accident in Mexico); *Vasquez v. Bridgestone/Firestone,* 192 F.Supp.2d 715 (E.D.Tex.2001)(stating that "Mexican law has been ruled to be adequate in a wrongful death action in this and other federal courts"). Neither discovery limitations nor the lack of a jury trial in a foreign forum makes that forum inadequate. *Neo Sack, Ltd. v. Vinmar Impex, Inc.,* 810 F.Supp. 829, 834 (S.D.Tex.1993).

Plaintiffs' arguments as to problems they will face in having certain items of evidence admitted in a Mexican court are not persuasive arguments against dismissal. According to defendants' expert on Mexican law, Jorge Vargas, photocopies and photographs are admissible if the contending parties consider the documents "irrefutable." (Docket Entry No. 54, Ex. A. (Supplementary Affidavit of Jorge Vargas), ¶ 20). Defendants Boeing and McDonnell Douglas have stated that they will not challenge the authenticity of their own documents, allowing photocopies of these documents to be admitted into evidence and thereby lessening the impact of Mexico's rules of evidence. (Docket Entry No. 54, p. 11). Citing a different provision of Mexican law, plaintiffs' expert, Ricardo Diez, claims that photocopies are not admissible. (Docket Entry No. 51, Ex. D) (Affidavit of Ricardo Diez, ¶¶ 11–12). However, Diez does state that photographs may be admissible even if not taken in the presence of a Notary Public, based on the judge's discretion. (Docket Entry No. 51, Ex. D (Affidavit of Ricardo Diez), ¶ 12). The differences between American and Mexican substantive and procedural law are likely not so great as to deprive plaintiffs of any remedy in a Mexican court; plaintiffs cite no Fifth Circuit case that has ever found Mexico to be an inadequate forum because of these differences. This court finds that Mexico is an adequate alternative forum for this litigation, if all defendants agree to submit to the jurisdiction of the Mexican courts and waive limitations defenses that accrued after this suit was filed.

## C. The Private Interest Factors

■ The private interest factors support dismissal of this case in favor of a Mexican forum. The relative ease of access to sources of proof supports dismissal. Much of the physical evidence in this case

is in Mexico. Most of the fact witnesses are in Mexico, including: the control tower personnel who communicated with the aircraft; the airport personnel who were eyewitnesses to the accident; the search and rescue teams that responded to the crash; other eyewitnesses to the accident; the aircraft mechanics involved in the maintenance of the aircraft; the pilots; the flight crew trainers are all in Mexico; and the Mexican authorities who conducted the investigation of the accident. Critical documents, including AeroMexico's aircraft maintenance records, are kept at its headquarters in Mexico.

Courts faced with similar facts, involving suits by Mexican nationals alleging damages as a result of plane crashes in Mexico, have dismissed in favor of a Mexican forum under the doctrine of *forum non conveniens. See de Aguilar,* 806 F.Supp. at 143–144 (dismissing a case involving an airplane crash in Mexico where the investigation of the crash was conducted by Mexican authorities; the investigation records were located in Mexico; the physical evidence and all the material generated in the investigation were in Mexico; maintenance and inspections of the aircraft were conducted in Mexico; maintenance records were kept in Mexico; the mechanics, pilot trainers, and technicians were all in Mexico). In addition, because the decedents were Mexican citizens and residents, and the plaintiff survivors live in Mexico, the damages evidence is likely to be in Mexico as well. *Id.* (noting that "since most of the plaintiffs are Mexican citizens, evidence and witnesses concerning damage issues will also be located in Mexico").

Plaintiffs contend that because aircraft engineers in the United States and Federal Aviation Administration officials will be important witnesses, a trial in the United States would be as convenient as one in Mexico. It is undisputed that the aircraft was designed by a United States company and that the aircraft was registered with the Federal Aviation Administration. (Docket Entry No. 64, ¶¶ 7–10). AeroMexico also followed the FAA's maintenance guidelines for the aircraft. (*Id.* at ¶ 8). It is also undisputed that some equipment from the plane, including part of the brake system and the cockpit voice and data recorders, was sent to laboratories in the United States for analysis. In *Baumgart,* 981 F.2d 824, plaintiffs argued against *forum non conveniens* dismissal of an aircraft accident case based on similar facts. In that case, the engineers responsible for designing the relevant system of the aircraft, the FAA personnel who certified the aircraft and investigated the crash, and other experts on similar accidents, all lived in the United States. The *Baumgart* court rejected the argument and held that these connections to the United States did not make it a more convenient forum. In this case, as in *Baumgart,* there are more significant connections between the case and the foreign forum, that make dismissal under *forum non conveniens* appropriate. *See also Nolan,* 762 F.Supp. at 683 (stating that "even if plaintiffs intend to base their case on the negligence of defendants in the planning, design, manufacture, assembly, testing, service and inspection of the aircraft and its engines, the evidence regarding the crash" was central to the tragedy and the fact that much of that evidence was in the foreign forum weighed in favor of dismissal); *de Aguilar,* 806 F.Supp. at 144 ("the fact that some evidence concerning the aircraft's design and manufacture may be located elsewhere in the United States does not make the Eastern District of Texas a convenient forum").

Plaintiffs also argue that because numerous documents written in English will be relevant to this case, a United States forum would be more convenient than a

Mexican forum. Plaintiffs note that many relevant documents, such as records of FAA inspections of the aircraft involved in the accident and of other AeroMexico aircraft, as well as documents relating to the design and manufacture of the aircraft and the post-accident testing, are all in English. Certainly many of the relevant design and maintenance documents are in English. (Docket Entry No. 49, p. 14). However, other critical documents, including the accident report and medical records, are in Spanish. (Docket Entry No. 34, Ex. A). Some potential witnesses speak Spanish; others speak English. The language difference does not weigh strongly in favor of either forum.

The second private interest factor, the availability of compulsory process for the attendance of unwilling witnesses and the costs of securing the attendance of willing witnesses, weighs in favor of dismissal. The facts disclosed in the parties' pleadings and submissions and the claims and defenses of the parties disclosed in the pleadings show that there will be some fact witnesses from the United States, but that many of the fact witnesses will come from Mexico.[6] The accident investigators of the accident were Mexican. The airport personnel and air traffic controllers were Mexican. The aircraft mechanics were Mexican. Many of the eyewitnesses to the

accident were Mexican. The pilot was Mexican. This court cannot compel the presence of these Mexican witnesses in this Texas forum. Although defendants could obtain the testimony of Mexican witnesses through depositions or affidavits, "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition is to create a condition not satisfactory to litigants." *Perez & Compania (Cataluna), S.A. v. M/V Mexico I*, 826 F.2d 1449, 1453 (5th Cir.1987). Some of the United States fact witnesses will likely be employees or agents of defendants. This court can condition dismissal upon defendants making such witnesses, as well as defendants' documents located in the United States, available in the foreign forum. *Nolan*, 762 F.Supp. at 683 (citing *Dahl v. United Tech. Corp.*, 632 F.2d 1027 (3d Cir.1980)).

Plaintiffs argue that their choice of a United States forum is entitled to substantial deference and that to give a lower degree of deference to plaintiffs' forum selection violates American treaty obligations under the International Covenant on Civil and Political Rights. This treaty prohibits according inferior treatment to foreign citizens in American courts.[7] The case law does not support this argument. In *Piper Aircraft*, the Supreme Court stat-

---

6. Plaintiffs cite cases decided outside this circuit for the proposition that defendants must identify specific witnesses and the relevance of their expected testimony in order for this private factor to weigh in favor of dismissal. *See Brandon Apparel Group, Inc. v. Quitman Mfg. Co.*, 42 F.Supp.2d 821, 834 (N.D.Ill. 1999); *Photoactive Prods., Inc. v. AL–OR Int'l Ltd.*, 99 F.Supp.2d 281, 292 (E.D.N.Y.2000). However, Fifth Circuit cases have not required such specificity in weighing this factor. *See Perez*, 826 F.2d at 1453 (finding that the availability of witnesses factor weighed in favor of dismissal when "all relevant witnesses" were in the foreign forum); *de Aguilar, 806 F.Supp.* at 144 (stating that "since most of the

plaintiffs are Mexican citizens, evidence and witnesses concerning damage issues will also be located in Mexico"); *Neo Sack*, 810 F.Supp. at 836 (finding that the availability of witnesses factor weighed in favor of dismissal when many of the potential witnesses lived in the foreign forum).

7. Article 14(1) of the treaty states that "All persons shall be equal before the courts and tribunals." *See Dubai Petroleum v. Kazi*, 12 S.W.3d 71, 82 (Tex.2000) (quoting the International Covenant on Civil and Political Rights).

ed that "a foreign plaintiff's selection of an American forum deserves less deference than an American citizen's selection of his home forum." 454 U.S. at 256, 102 S.Ct. at 265–266. The fact that a foreign plaintiff's choice of an American forum receives less deference than an American plaintiff's choice of a domestic forum is "not because of chauvinism or bias in favor of [United States] residents. It is rather because the greater the plaintiff's ties to the plaintiff's chosen forum, the more likely it is that the plaintiff would be inconvenienced by a requirement to bring the claim in a foreign jurisdiction. Also, while our courts are of course required to offer equal justice to all litigants, a neutral rule that compares the convenience of the parties should properly consider each parties' residence as a factor that bears on the inconvenience that party might suffer if required to sue in a foreign nation." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir.2000).

The central purpose of the *forum non conveniens* inquiry is to ensure that the trial is convenient. *Piper Aircraft*, 454 U.S. at 256, 102 S.Ct. at 266. When a foreign plaintiff chooses a United States forum, it is "much less reasonable" to presume that the choice was made for convenience. *Id.* By giving foreign plaintiffs' choice of an American forum less deference than an American plaintiff's choice of a domestic forum, a court is not engaging in "impermissible chauvinism," or violating treaty obligations, but rather performing the *forum non conveniens* balancing test approved by the Supreme Court.

The final private interest factor this court must consider is the potential difficulties plaintiffs may have in enforcing the judgment of a foreign court against defendants. "Th[e] court can protect plaintiffs by conditioning dismissal on defendants' agreement to satisfy any judgment ren-

dered by a court in" Mexico. *Nolan*, 762 F.Supp. at 684.

To summarize the private interest factors, this court finds that the relative ease of access to sources of proof in Mexico and the presence of many critical potential witnesses in Mexico weigh heavily in favor of dismissing this case on *forum non conveniens* grounds. Other practical factors, such as the language barrier, do not weigh in favor of either a United States or Mexican forum. This court can eliminate concerns about the plaintiffs' ability to enforce the judgment of a Mexican court in this case by requiring defendants to agree to satisfy any final judgment rendered by courts in that forum.

## D. The Public Interest Factors

The public interest factors also weigh in favor of dismissal. The first factor, the interest in minimizing administrative difficulties, does not strongly favor dismissal. There are only two plaintiffs in this case. The case will not absorb more of this court's time than other cases. *Compare Nolan*, 762 F.Supp. at 684 (stating that the fact that the case involved 100 foreign plaintiffs indicated the case would take "months" to try); *Baumgart*, 1991 WL 487242 at * 7 (stating that the fact that the case involved nineteen foreign plaintiffs indicated that the case would take a substantial amount of time to try).

The second public interest factor, the interest in resolving local controversies locally, supports dismissal. The plaintiffs are Mexican; the accident occurred in Mexico; the damages are felt in Mexico; and Mexico has a great interest in regulating its own activities. The American interest in this case is not as strong. The facts of this case have scant connection with Texas. Defendants McDonnell Douglas; Boeing Company; First Security; Wells Fargo Northwest; Wells Fargo; Crane;

and Hydro–Aire have few contacts with Texas. It is undisputed that banks that owned the plane are headquartered in Utah and California. McDonnell Douglas and Boeing do not have operations in Texas. Plaintiffs have not alleged that any part of the aircraft was designed or manufactured in Texas. AeroMexico has a sales office in Houston, Texas, where, according to plaintiffs, the United States operations are based, but the principal place of business and operations is in Mexico.

Plaintiffs contend that because Wells Fargo leases aircraft, possibly to Texas-based airlines, and AeroMexico has an office in Houston, Texas has an interest in this case. Recognizing such an interest does not address the much stronger interest Mexico has in this case. The accident occurred in Mexico, and all of the victims were Mexican citizens. The aircraft was maintained and operated by a Mexican company, in Mexico. The aircraft manufacturers and owners were American. *See Piper Aircraft*, 454 U.S. at 260, 102 S.Ct. at 268 (when an aircraft accident occurred in a foreign country; the victims were all citizens of that country; and only the aircraft and propeller manufacturer were American citizens, the foreign forum had a "very strong interest" in the case).

Plaintiffs also argue that Texas has an interest in protecting its flying citizens because DC–9 aircraft similar to the one involved in this case are used all over the world. (Docket Entry No. 49, p. 18). The Supreme Court responded to a similar argument in *Piper Aircraft*, stating that while "American citizens have an interest in ensuring that American manufacturers are deterred from producing defective products, . . . the incremental deterrence that would be gained if this trial were held in an American court is likely to be insignificant." 454 U.S. at 260–61, 102 S.Ct. at 268. In *Baumgart*, the aircraft which crashed in Germany and killed German citizens was designed and manufactured in Texas. Nevertheless, the Fifth Circuit affirmed the district court's finding that Germany had the stronger interest in the case. 1991 WL at 487242, *7, *aff'd* 981 F.2d at 837 (affirming the district court's finding that "on balance, . . . Germany is the focal point of the case"). Texas does not have as strong an interest in this case as the American court did in *Baumgart*, because the aircraft and its components in this case were neither designed nor manufactured in Texas.

The third public interest factor, the interest in having the trial of a diversity case in a forum that is familiar with the law governing the action, strongly favors dismissal. Mexican law likely will govern this case. *See infra*. Texas follows the "most significant relationship test" set out in the Restatement (Second) of Conflict of Laws § 6 and § 145. *Torrington*, 46 S.W.3d at 848; *Gutierrez*, 583 S.W.2d at 318. Mexico has the "most significant relationship" to the facts of this case. Mexico is the place where the injury occurred. The aircraft was maintained in Mexico. The plaintiffs are Mexican. The defendant airline, AeroMexico, is a Mexican airline. The case law strongly supports the conclusion that Mexican law applies in this case. *See Price*, 784 F.2d 600 (state in which accident at issue occurred had a more significant relationship to the occurrence than state in which design or manufacturing defect in machine involved in accident allegedly occurred); *Baumgart*, 1991 WL 487242, at *8, *aff'd* 981 F.2d at 837 (where Texas-built aircraft crashed in Germany and injured German citizens, German law, and not Texas law, would most likely apply under most significant relationship test); *Nolan*, 762 F.Supp. at 685, *aff'd* 919 F.2d at 1069 (where plaintiffs were English citizens injured in the crash of an American-built aircraft in England, English law

would likely apply under the most significant relationship test). The validity of the releases executed by defendant Zermeno on behalf of himself and his son, releasing AeroMexico from liability, is also likely governed by Mexican law. Mexican law likely applies to both the tort and contract aspects of this case. There is a strong interest in trying this case in a forum that is familiar with Mexican law.

Plaintiffs contend that this case presents a "false conflict" between Texas law and Mexican law, so that this court need not look to the "most significant relationship" test in choosing between Texas and Mexican law. Plaintiffs argue that Texas is the only interested forum and that Texas law should apply. *See Baird v. Bell Helicopter Textron,* 491 F.Supp. 1129, 1139 (N.D.Tex.1980)("before engaging in the [most significant relationship analysis], this court must determine the exact nature of the conflict or indeed, if a conflict even exists"). However, in *Baird,* a case involving the crash of a Texas-built helicopter which injured its Canadian owners, the court did apply the most significant relationship test to determine whether Texas or Canadian tort law applied as to the question of liability. *Id.* at 1141 (stating that both Texas and Canada had an interest in the case and finding that Texas law applied because Texas had an interest in protecting citizens from defective products and in regulating Texas manufacturers).

This case involves the threshold question of defendants' liability. This court must apply the most significant relationship test to determine the controlling law as to liability. Even plaintiffs note that the question of a "false conflict" arises most often in cases involving a foreign forum's limitation on damages, which is not present in this case. (Docket Entry No. 49, p. 21).

Plaintiffs cite *Ford Motor Co. v. Aguiniga,* 9 S.W.3d 252 (Tex.App.-San Antonio 1999, pet. denied.) in arguing that Texas's interest in this case is minimal and that a false conflict exists. However, the court in *Aguiniga* also looked to the relationship between the parties and competing fora to determine whether a conflict existed. In *Aguiniga,* a case arising out of a car accident in Mexico, defendant sought to apply the Mexican law of damages and plaintiffs sought to apply Texas damages law. In finding that Texas law applied, the court weighed the most significant relationship factors, noting that plaintiffs were primarily citizens of Texas and defendant was a United States automaker. The only connection to Mexico was the fact that the accident occurred there. *Id.* at 261. This case differs significantly from *Aguiniga.* The plaintiffs and decedents are Mexican; the aircraft was operated and maintained by a Mexican airline; and the accident occurred in Mexico.

The final public interest factor, the interest in avoiding the unfair burdening of citizens in an unrelated forum with jury duty, weighs in favor of dismissal. This case has minimal connections to Texas. Jury duty should not be imposed on the citizens of Texas in a case that is so slightly connected with this state. *See Nolan,* 762 F.Supp. at 685 (citing *Pain v. United Tech. Corp.,* 637 F.2d 775, 792 (D.C.Cir. 1980)).

The weight of the public interest factors also supports dismissal of this case. Mexico is the focal point of this case, and Mexican law will most likely apply. Numerous issues of Mexican law have already been raised by the parties. Texas, on the other hand, has slight connections with, and a lower interest in, this case than does Mexico.

To summarize, this court finds that Mexico is an adequate and available forum for this case, with the appropriate conditions on the dismissal. The weight of both the

private and public factors support dismissal of this case on grounds of *forum non conveniens.*

### IV. Plaintiffs' Motion to Enlarge Time to Serve Defendants The Crane Corporation and Hydro–Aire

Plaintiffs seek to enlarge the time to serve defendants Crane and Hydro–Aire. Plaintiffs sought to add Crane and Hydro–Aire in August 2002. Plaintiffs initially sent a copy of the summons and the complaint to the Corporation Trust Company, believing it to be the registered agent for service of process. (Docket Entry No. 61, ¶ 4). Corporation Trust returned the documents to plaintiffs on September 23 and September 25, 2002, stating that they were not the statutory agent for service of process for either Crane or Hydro–Aire. (*Id.* at Ex. A). Plaintiffs then sent the complaint, a waiver of service, a notice of waiver, and a summons to the corporate headquarters of Hydro–Aire, but did not address the mailing to a particular manager or officer. (*Id.* at ¶ 4, Ex. B). Plaintiffs contend that on October 29, 2002, counsel for Crane and Hydro–Aire contacted plaintiffs' counsel by phone and stated that he would be filing an answer on behalf of both parties and requested additional time to do so. (*Id.* at ¶ 5). Defendants contend that plaintiffs' counsel contacted counsel for Crane and Hydro–Aire and did not inform him that Crane and Hydro–Aire had not been properly served. Defendants' counsel states that he agreed to file an answer by November 12, 2002, thinking that Crane and Hydro–Aire had been properly served. (Docket Entry No. 69, p. 2). Defendants' counsel sent a letter to counsel for plaintiffs confirming that defendants would file an answer by November 12, 2002. (Docket Entry No. 61, Ex. D). Defendants state that defense counsel later learned that plaintiffs had not properly served Crane and Hydro–Aire.

(Docket Entry No. 69, p. 2). Defendants still have not filed an answer. The one hundred twenty days period specified in Federal Rule of Civil Procedure 4(m) for service of process ended on December 19, 2002. (Docket Entry No. 69, pp. 2–3; Docket Entry No. 61, ¶ 8).

In January 2003, plaintiffs' counsel inquired as to why defendants had not filed their answer. Defendants' counsel then asserted his contention that service was defective. Plaintiffs moved to enlarge the time to serve defendants Crane and Hydro–Aire on January 14, 2003. Defendants have filed an opposition.

Plaintiffs contend that service was effective and, alternatively, that objection was waived or that there is good cause to extend the deadline. (Docket Entry No. 61, ¶ 11). Defendants argue that plaintiffs failed properly to serve process and dispute that they waived their objection by agreeing to file an answer by November 12, 2002. Plaintiffs also contend that this court does not have good cause to extend the time for service.

Federal Rule of Civil Procedure 4(h)(1) provides:

> ... service upon a domestic or foreign corporation ... shall be effected ... by delivering a copy of the summons and of the complaint to an officer, a managing general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by appointment or by law to receive service and the statute so requires, by also mailing a copy to the defendant ...

Federal Rule of Civil Procedure 4(d)(2) provides:

> An individual, corporation, or association that is subject to service under subdivision (e), (f), or (h) and that receives notice of an action in the manner provid-

ed in this paragraph has a duty to avoid unnecessary costs of serving the summons. To avoid costs, the plaintiff may notify such a defendant of the commencement of the action and request that the defendant waive service of a summons. The notice and request

> (a) shall be in writing and shall be addressed directly to the defendant, if an individual, or else to an officer or managing or general agent (or other agent authorized by appointment or law to receive service of process) of a defendant subject to service under subdivision (h) . . .

The comment to the 1993 Amendments of Rule 4(h) states that "care must be taken, however, to address the request to an individual officer or authorized agent of the corporation. It is not effective use of the Notice and Request procedure [of Rule 4(d)(2) ] if the mail is sent undirected to the mail room of the organization." In this case, it appears that the service plaintiffs did not address the service they mailed to Hydro–Aire to a specific individual. (Docket Entry No. 61, Ex. B). There is no evidence that plaintiffs attempted to serve Crane directly after the Corporation Trust Company informed plaintiffs that they were not Crane's agent. On these facts, plaintiffs did not properly serve defendants Crane and Hydro–Aire within 120 days after filing their amended complaint adding Crane and Hydro–Aire as defendants.

Under Rule 4(m), a district court has two choices when a plaintiff fails to serve a defendant within 120 days of filing the complaint. The court may either dismiss the action without prejudice or direct that service be effected within a specified time. FED. R. CIV. P. 4(m); *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir.1996). The district court must first determine whether good cause exists for extending the time

for service. If good cause is present, the district court must extend time for service. If good cause does not exist, the court may, in its discretion, decide whether to dismiss the case without prejudice or extend time for service. *Id.* A dismissal with prejudice cannot be based on Rule 4(m)'s 120–day requirement. *Bann v. Ingram Micro, Inc.,* 108 F.3d 625, 626 (5th Cir. 1997).

 The plaintiff bears the burden of showing good cause. *Hickman v. U.G. Lively,* 897 F.Supp. 955, 959 (S.D.Tex. 1995) (citing *Kersh v. Derozier,* 851 F.2d 1509, 1512 (5th Cir.1988)). Good cause is more than simple inadvertence, mistake, or ignorance. *Id.* (citing *Winters v. Teledyne Movible Offshore, Inc.,* 776 F.2d 1304, 1306 (5th Cir.1985)). "Good cause . . . would appear to require at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of 'good faith on the parties seeking enlargement and some reasonable basis for noncompliance within the time specified' is normally required." *Kersh,* 851 F.2d at 1512. Good cause, at a minimum, means excusable neglect, and a plaintiff also may be required to show that the party to be served personally received actual notice of the lawsuit; the defendant would not suffer any prejudice by the court extending the 120–day deadline; and the plaintiff would be severely prejudiced if his complaint were dismissed. *Hickman,* 897 F.Supp. at 959 (citing *Boudette v. Barnette,* 923 F.2d 754, 756 (9th Cir.1991)). "The excusable neglect standard is a strict one . . . requiring more than mere ignorance." *Kersh,* 851 F.2d at 1512.

 Plaintiffs may be severely prejudiced if this case is dismissed without conditions. Under Texas law, the statute of limitations for a wrongful death action is

two years from the date of death. *See* TEX. CIV. PRAC. & REM. CODE §§ 16.003(a); 16.003(b); *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343 (Tex.1992). Under Mexican law, limitations is, at most, two years. (Docket Entry No. 51, ¶¶ 15, 16). The accident occurred in October 2000; the statute of limitations period ended in October 2002. A dismissal of the wrongful death cause of action without a condition requiring a waiver of a limitations defense would likely operate as a dismissal with prejudice. *Long v. Simmons*, 77 F.3d 878, 880 (5th Cir.1996). A dismissal with prejudice cannot be based on Rule 4(m)'s 120–day requirement. *Bann*, 108 F.3d at 626. *See also Esteen v. Brown & Williamson*, 2001 WL 1524520 (E.D.La.)(refusing to dismiss under Rule 4(m) in part because plaintiff would be time-barred from relitigating). This fact alone suggests there is good cause for enlarging the time for plaintiffs to serve defendants.

Other facts support plaintiffs' motion for additional time to effect service on Crane and Hydro–Aire. Plaintiffs attempted to serve Hydro–Aire twice. Both Crane and Hydro–Aire had actual notice of the wrongful death and survival actions. Defendants' counsel sent a letter with a copy by facsimile to plaintiffs' counsel, stating that he would be representing defendants Crane and Hydro–Aire in this matter. (Docket Entry No. 61, Exs. D, E). Defendants' counsel agreed to file an answer and did not advise counsel for plaintiffs of an intent to assert defective service. Courts have held that if defendants act so as to cause plaintiff to believe service is effective, plaintiff may show good cause for delay in effecting proper service. *See Roque v. U.S.*, 857 F.2d 20, 21 (where defendant filed an answer that did not directly challenge the service of process, and then challenged service after the 120–day time period expired, the court found "good cause" to excuse plaintiff's failure to properly serve defendant).

Defendants cite *MacCauley v. Wahlig*, 130 F.R.D. 302, 304–305 (D.Del.1990), *aff'd* 919 F.2d 135 (3d Cir.1990) for the proposition that reliance on a defendant's promise to file an answer does not excuse a plaintiff from effecting service. However, in *Mac-Cauley*, defendants stated that they would file an answer only if the plaintiffs would dismiss certain individual defendants from the action. Plaintiffs did not dismiss the defendants before the end of the 120 day period. The court stated that it was unreasonable for plaintiffs to rely on defendants' promise to answer without first dismissing the individual defendants. In this case, defendants unconditionally promised that they would respond no later than November 12, 2002. It was not unreasonable for plaintiffs to believe that service had been properly effected and that an answer would be forthcoming. *Compare McGinnis v. Shalala*, 2 F.3d 548 (5th Cir. 1993) (good cause not found where plaintiff's first attempts at service were defective, defendant promptly notified plaintiff of the defective service, and plaintiff waited until after the 120 day period had expired before again serving defendant). Additionally, plaintiffs did not delay in seeking an enlargement of time to effect service after defendants claimed that there was no effective service. Defendants would not be prejudiced if plaintiffs were granted an extension of time to serve process.

The facts show that good cause exists for extending the time for plaintiffs to serve process on Crane and Hydro–Aire, and support the exercise of this court's discretion to extend the time for service. Plaintiffs' motion to extend the time for serving defendants Crane and Hydro–Aire is GRANTED.

## V. Conclusion

Defendants' motion to dismiss this case on grounds of *forum non conveniens* is GRANTED as to all defendants, provided: (1) all defendants submit to service of process and jurisdiction in the appropriate Mexico forum; (2) plaintiffs file suit in an appropriate Mexican court within 120 days of the date of the order of dismissal; (3) defendants formally waive statute of limitations defenses accrued after the filing of this suit; (4) defendants agree to make available in Mexico all documents and witnesses within their control; and (5) defendants agree to satisfy any final judgment made by the Mexican courts in this matter, this court will resume jurisdiction upon request and reopen these cases.

Plaintiffs' motion to enlarge the time for service of process on Crane and Hydro–Aire is GRANTED. Plaintiffs must serve Crane and Hydro–Aire within 30 days. The dismissal order will not be entered until Crane and Hydro–Aire have filed an answer and statements as to their willingness to meet the conditions on dismissal.